NO.   94-331

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995



IN THE MATTER OF THE
MENTAL HEALTH OF R.M.,

      Respondent.

FILED

FEB a 5 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                  In and for the County of Lewis and Clark,
                  The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Lonnie J. Olson and Allen Smith, Jr.,
          Mental Disabilities Board of Visitors,
          Warm Springs, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General; Kathy
          Seeley, Ass't Attorney General, Helena, Montana

          Mike McGrath, Lewis & Clark County Attorney,
          Helena. Montana

Submitted on Briefs:   December 22, 1994

Decided:   February 15, 1995

Filed:

*[signature]*

Clerk

**Justice** Karla M. Gray delivered the Opinion of the Court.

R.M. appeals from the findings of fact, conclusions of law and order of the First Judicial District Court, Lewis and Clark County, committing him to the custody of the Montana Department of Corrections and Human Services (Department) for placement at the Montana State Hospital. We reverse, concluding that the District Court failed to follow the procedures set forth in §§ 53-21-122 and 53-21-123, MCA.

The facts are undisputed. R.M. is a forty-four year old male who was diagnosed with schizophrenia in 1978. Prior to April 1994, he had been residing at a boarding house in California and taking medication for his illness. On April 4, 1994, R.M. boarded a bus for Helena, Montana, for a two-week visit with his sister. He arrived in Helena April 17, 1994, with most of his supply of medication still on his person. No one is certain of R.M.'s whereabouts between the time he left California and the time he arrived in Helena. Shortly after his arrival, R.M. began acting confused, delusional and threatening. At one point, he believed his sister was his mother.

Concerned for his well-being, R.M.'s sister admitted him to St. Peter's Hospital. While there, R.M. had trouble sleeping, threatened the hospital staff and stated openly that he wanted to "hang" his family. He also destroyed hospital property and inflicted minor physical harm on himself.

On April 27, 1994, Lewis and Clark County (County) petitioned the First Judicial District Court for R.M.'s commitment, alleging

2

that he was seriously mentally ill. Attached to the petition was a "Present Mental Status" report prepared by Carol Frazer (Frazer), the hospital employee who had requested that the County file the petition.

At 2:30 p.m. on April 27, 1994, R.M. was brought before the court and advised of his rights. The District Court immediately conducted a hearing on the County's commitment petition. Frazer testified, relating the information provided in her mental status report and opining that R.M. was seriously mentally ill. No other witnesses were called. Following the hearing, the District Court filed its findings of fact, conclusions of law and order committing R.M. to the custody of the Department for placement at the Montana State Hospital at Warm Springs. The commitment was not to exceed 90 days.

Following the filing of the commitment order, the court filed another order directing that the commitment hearing would occur at 2:40 p.m. that day and that the Frazer report was "sufficient to meet the requirements of Section 53-21-123, MCA, and no further examination for the purpose of determining whether the hearing shall be held as scheduled is required."

R.M. subsequently was committed to the Montana State Hospital and released 90 days later. He appeals from the order of commitment. We note at the outset that there is no dispute regarding the appealability of the order, despite the fact that R.M. already has been released. See Matter of E.P. (1990), 241 Mont. 316, 320, 787 P.2d 322, 325; § 53-21-131, MCA.

3

The dispositive issue in this case is whether the District Court complied with the requirements of §§ 53-21-122 and 53-21-123, MCA. This issue involves the application of statutes to undisputed facts, which is a question of law; we are not bound by the trial court's interpretations of law. Lundberg v. Liberty Northwest Ins. co. (Mont. 1994), ___ P.2d ___, ___, 51 St.Rep. 1254, 1255 (citations omitted).

Civil commitments in Montana are governed by Title 53, Chapter 21, MCA. Section 53-21-121, MCA, allows a county attorney to file a petition seeking the commitment of a person alleged to be seriously mentally ill upon the written request of a person having direct knowledge of the facts. When presented with such a petition, the district court must first consider whether probable cause exists to support the petition.. Section 53-21-122(2)(a), MCA. If probable cause exists, the court must immediately appoint counsel for the respondent and hold an initial hearing at which the respondent must be advised of his or her constitutional rights and the substantive effect of the petition. Section 53-21-122(2)(b)(i), MCA. The court also must appoint a professional person to examine the respondent, appoint a friend for the respondent, and set a date and time for a hearing on the petition. Section 53-21-122(2)(b)(ii), MCA. A "professional person" is either a medical doctor or an individual who has been certified by the Department in accord with recognized national standards in the field of mental health. Sections 53-21-102 and 53-21-106, MCA.

Following the initial hearing, and without unreasonable delay,

4

the appointed professional must examine the respondent and report to the county attorney and the court.  Section 53-21-123(1), MCA. If the professional person recommends dismissal of the petition, the court ordinarily must dismiss the petition.  Section 53-21-123(2)(a), MCA.  On the other hand, if the professional person so recommends, the commitment proceedings continue and the court-ordered hearing on the petition is held as scheduled.  Section 53-21-123(2)(b), MCA.

We consistently have held that "Montana's civil commitment laws are to be strictly followed."  Matter of S.J. (1988), 231 Mont. 353, 355, 753 P.2d 319, 320 (citations omitted).  The procedural safeguards contained in those laws are of critical importance because of the "calamitous effect of a commitment[,]" including loss of liberty and damage to a person's reputation. Matter of Shennum (1984), 210 Mont. 442, 450-451, 684 P.2d 1073, 1078.

Here, the District Court complied with portions of § 53-21-122, MCA.  After impliedly concluding that probable cause existed to believe that R.M. may be seriously mentally ill, the court appointed counsel for R.M. and advised him of his rights and the substantive effect of the petition.  The court also appointed a friend for R.M. and set a time for a hearing on the petition. Each of these steps conformed to the initial hearing requirements set forth in § 53-21-122, MCA.

The court did not, however, appoint a professional person for R.M., as required by § 53-21-122(2)(b)(ii)(A), MCA.  As a result,

the court failed to have R.M. examined by the appointed professional person and to consider the results of that examination before proceeding further. The statutory requirements for a civil commitment clearly were not strictly followed.

The District Court's conclusion that the Fraser report was sufficient to meet the statutory requirements regarding examination by a professional person apparently was based on the fact that Fraser is a certified professional person under § 53-21-106, MCA. Under such a circumstance, the court apparently determined that the statutory requirements of §§ 53-21-122 and 53-21-123, MCA, had been met, as a practical matter, in that Fraser had examined R.M. and concluded that he was seriously mentally ill. The statutes do not contemplate such shortcuts, however practical.

Section 53-21-122(2)(b)(ii)(A), MCA, mandates the appointment of a professional person after the court has made a probable cause determination, appointed counsel, and brought the respondent before the court for an initial hearing. Here, no appointment was ever made by the court. Instead, the court relied on an examination of R.M. performed before the commitment proceeding was initiated, and by the very person who requested that the commitment petition be filed.

The court's failure to comply with the requirements of § 53-21-123, MCA, flowed inexorably from its failure to appoint a professional person pursuant to § 53-21-122, MCA; as a result, little additional discussion is required. Suffice it to say that § 53-21-123, MCA, was violated as follows: no examination of R.M.

6

occurred " [f]ollowing **the initial hearing,"** **no** **report** **of** **that** examination was provided to the court, and no decisions by the court regarding further proceedings were based on such an examination.

The State argues that R.M.'s failure to object to the procedures utilized by the District Court precludes him from raising the issue here. We disagree.

We previously have addressed the combined issues of the mootness of an appeal once a person has been released from an involuntary commitment and the failure to raise an issue at the district court. In an appeal following an involuntary civil commitment, we rejected the State's reliance on the general rule that issues cannot be raised for the first time on appeal. Matter of N.B. (1980), 190 Mont. 319, 323, 620 P.2d 1228, 1231. We concluded that an exception existed where, as in the case of a civil commitment, the substantial rights of an individual were involved. Matter of N.B., 620 P.2d at 1231.

The State attempts to distinguish Matter of N.B. by characterizing the statutory requirements regarding the appointment of, and examination by, a professional person as not relating to the "heart" of the commitment proceeding. We reject such a distinction based on our long-standing requirement that the statutory procedures for the commitment of an allegedly mentally ill individual must be strictly followed. The "heart" of a civil commitment proceeding is as much the individual steps which lead a court to the careful conclusion that a person is seriously mentally

7

ill, as is the conclusion itself. The purpose of these statutory requirements is to insure that the government does not invade an individual's freedom or liberty without due notice, cause and process. See Matter of Shennum, 684 P.2d at 1076.

We hold that the District Court erred in failing to comply with the requirements of §§ 53-21-122 and 53-21-123, MCA. Reversed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

February  15,  1995

CERTIFICATE   OF   SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Lonnie J. Olson, Esq.
Mental Disabilities Board of Visitors
P.O.  Box  177
Warm Springs, MT 59'756

J. Mayo Ashley
Attorney  At  Law
222   Broadway
Helena MT 59601

Hon. Joseph P. Mazurek, Attorney General
Kathy Seeley, Assistant
215 N. Sanders
Helena MT 59620

Mike McGrath
Lewis & Clark County Attorney
228   Broadway
Helena,  MT  59601

ED  SMITH
CLERK  OF  THE  SUPREME  COURT
STATE  OF  MONTANA

BY: _____
Deputy