FILED

November 3 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0171

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 366

IN THE MATTER OF THE MENTAL HEALTH OF:

L.K.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DI 07-002
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Robin Meguire; Attorney at Law, Great Falls, Montana

    For Appellee:

    Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General, Helena, Montana

    Joe Coble; Teton County Attorney, Choteau, Montana

Submitted on Briefs:  August 26, 2009

Decided:  November 3, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1	L.K. appeals from the February 26, 2009, order of the District Court of the Ninth Judicial District, Teton County, committing her to the Montana State Hospital at Warm Springs for a period not to exceed ninety days.  We reverse.

¶2	L.K. presents the following issue for review:

¶3	Whether L.K.'s right to due process was violated when the District Court conducted the commitment hearing by video conferencing, and then completed the hearing after L.K. left the video conference room.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4	On February 23, 2009, the State filed a petition alleging that L.K. suffered from a mental disorder and that she required commitment.  The District Court held an emergency hearing the same day, and found that there was probable cause to believe that L.K. suffered from a mental disorder, that she was a danger to herself or others, and that the situation required her temporary detention at Warm Springs pending further hearing. The District Court appointed the Western Montana Crisis Response Team to conduct an examination of L.K. as provided for in § 53-21-118, MCA., and appointed counsel and a friend.  Professional person Mike Sawicki examined L.K. at Warm Springs, concluding that she suffered from paranoid schizophrenia, and that she should be involuntarily committed and medicated because she posed an imminent threat of injury to herself or others.

¶5    The combined commitment and disposition hearing was held on February 26, 2009. Judge McKinnon, the County Attorney, and L.K.'s attorney were present in the Teton County Courthouse in Choteau, Montana, while L.K. and her appointed friend appeared from Warm Springs through a two-way electronic audio-visual communication arrangement called Vision Net. This interactive equipment allows persons at different locations to hear and see each other during a proceeding.

¶6    The District Court only got two sentences into the hearing before L.K. began interrupting. L.K. stated:

> You are not a judge. I'm here to request a legal hearing, I have done so, and I'm now leaving and waiting for someone to send a vehicle to bring me to be physically present at a legal hearing with an actual judge, who is actually a member of the Bar. You may all go home now.

L.K. left the room at Warm Springs but returned, announcing that she would "sit here as an observer and listen to you lie." As the District Court attempted to proceed with the hearing, L.K. kept interrupting, stating such things as: "There is no hearing, I have not been speaking while you are speaking. You are not having a legal hearing." She told Judge McKinnon "[y]ou are playing make-pretend, you are playing dress up, and you are committing serious crimes." After a few minutes, L.K. announced "I'm going to leave now for my own health because the tension of being present in this little bully game of pretend trial is not something that I enjoy." She left the hearing and returned to her room.

¶7    The District Court noted that L.K. had left voluntarily, but that she could return to the hearing if she chose to do so. The County Attorney also noted L.K.'s absence and that it implicated the waiver requirements of § 53-21-119, MCA. The District Court

3

stated that L.K.'s departure from the hearing did not require a finding of a waiver of rights under that statute, and L.K.'s attorney agreed. He further agreed that the hearing could continue in L.K.'s absence. The District Court then heard testimony from several witnesses including law enforcement officers who had recently dealt with L.K., L.K.'s appointed friend, and professional person Sawicki. The District Court issued the order appealed from, committing L.K to Warm Springs for ninety days.

¶8 The facts that led to the commitment arose from 21 calls about L.K. to the Teton County Sheriff's Department between February 9 and February 20, 2009. There were numerous incidents in which she was being loud, confrontational and threatening with people in Choteau. She confronted people at a school playground and downtown, once calling children crazy criminals who should not be on the streets and barking at them like a dog. She confronted people who were cutting a tree on their own property, attempting to commandeer a truck they were using. She told a deputy who responded that she would shoot him if she could find a gun. She took a dead, decaying puppy to a veterinarian and asked that it be "fixed."

¶9 She attempted to buy a gun at a sporting goods store but was unsuccessful because the clerk was concerned about her statements and her "wild eyed" demeanor. She went to the sheriff to ask him to give her a gun and authorization to carry it so that she could stop the law breakers in town. Her attempts to get a gun concerned the sheriff because she appeared to be very unstable and unpredictable.

¶10 On appeal L.K. does not contest that these incidents occurred and does not contest the District Court's conclusion that she suffers from a serious mental illness that causes

4

her to be a danger to others. She has exhibited similar behavior in the past, and it has led to prior commitments. *In the Matter of L.K.*, 2008 MT 169, 343 Mont. 366, 184 P.3d 353; *In the Matter of L.K.*, 2009 MT 74N.

## STANDARD OF REVIEW

¶11 Due process claims arising from involuntary civil commitments are subject to plenary review. *In the Matter of T.M.*, 2004 MT 221, ¶ 7, 322 Mont. 394, 96 P.3d 1147.

## DISCUSSION

¶12 A person who is the respondent to a petition for involuntary commitment has statutory procedural rights, §§ 53-21-115 through -118, MCA, including the right to be present at any hearing or trial. Section 53-21-116, MCA. Those rights may be waived as provided by law, except that the right to counsel and the right to treatment may not be waived. Section 53-21-119, MCA. A commitment hearing may be conducted through video conferencing unless the respondent objects. Section 53-21-140, MCA.

¶13 L.K. first argues on appeal that she objected under § 53-21-140, MCA, to the use of video conferencing and that she therefore had the absolute right to be physically present at the hearing. The record of the February 26, 2009 hearing does not contain an objection by L.K. or her attorney to the use of video conferencing. L.K.'s evident intent, as expressed in the record of that hearing, was to disrupt and control the proceeding and to berate others who were participating. She was particularly focused on Judge McKinnon, accusing her of not being a real judge, of not being an attorney and of being a criminal and liar. She demanded a hearing before a "real" judge who was not an imposter and criminal. These were the reasons L.K. gave for wanting to be taken to a

5

different hearing. She stated no objection to the fact that the proceedings were being conducted through video conferencing, and her statements on the record cannot be fairly construed as an objection to the use of video conferencing. Moreover, neither the District Judge, the county attorney, nor L.K.'s attorney, who were all present at the time, gave any indication that they construed what L.K. said as an objection to the use of video conferencing.

¶14 The District Court was not precluded from conducting the commitment hearing through the use of video conferencing.

¶15 L.K. next contends that the District Court could not conduct the commitment hearing after she left the video conference area at Warm Springs. Section 53-21-119, MCA, governs the waiver of rights in a commitment proceeding, including the right to be present. Subsection (1) provides that the respondent may waive her procedural rights, or if she is "not capable of making an intentional and knowing decision, those rights may be waived by [her] counsel and friend . . . acting together if a record is made of the reasons for the waiver." Subsection (2) specifically provides that a respondent's right to be present at her commitment hearing "may also be waived" by her attorney and appointed friend, with the concurrence of the appointed professional person. If such a waiver is proffered, the district court must also agree and find that the respondent's presence would adversely affect her mental condition.

¶16 While the District Court made it clear on the record that L.K. had the right to return and participate at any time before the hearing concluded, there are no findings on

6

the record sufficient to comply with the express requirements of § 53-21-119(1) or (2), MCA.

¶17 Under § 53-21-119(1), MCA, L.K. could waive her rights as set out in §§ 53-21-114 through -118, MCA. If she were not capable of "making an intentional and knowing decision" then her rights could be waived by her attorney and appointed friend, acting together, if a record were made of the reasons for the waiver. Here there is no record of a waiver made by L.K.'s attorney and friend acting together, and no record of any reasons for such a waiver. Further, there is nothing in the record to show that L.K. was capable of "making an intentional and knowing decision" to waive her rights as required by § 53-21-119(1), MCA.

¶18 At the time of the commitment hearing the District Court had determined that there was probable cause to believe that L.K. suffered from a mental disorder, and the Warm Springs evaluation had concluded that L.K. was suffering from paranoid schizophrenia. This, coupled with her behavior at the beginning of the hearing and her behavior that led to the petition for commitment at least called into question whether she could make an intentional and knowing decision to waive her right to be present. Therefore, there was an insufficient record of a waiver under § 53-21-119(1), MCA, of L.K.'s right to be present at the hearing.

¶19 Under § 53-21-119(2), MCA, L.K.'s right to be physically present at the hearing could be waived for her by her attorney and appointed friend, with the concurrence of the professional person and the judge. This waiver must be based upon a finding supported by facts that:

7

> (a) the presence of the respondent at the hearing would be likely to seriously adversely affect his mental condition; and
>
> (b) an alternative location for the hearing in surroundings familiar to the respondent would not prevent such adverse effects on his mental condition.

Section 53-21-119(2), MCA. While L.K.'s attorney agreed with the District Court's statement that § 53-21-119, MCA, did not apply, this was insufficient to comply with these express requirements of the statute. There was no record that the appointed friend or professional person concurred with a waiver of L.K.'s right to be present, and there was no record of findings supported by facts as required by § 53-21-119(2)(a) and (b), MCA. A waiver of rights should not be presumed. *State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1, 101 P.3d 288. Therefore, there was an insufficient record of a waiver under § 53-21-119(2), MCA, of L.K.'s right to be present at the hearing.

¶20 Absent compliance with § 53-21-119, MCA, the District Court could not conduct the hearing in L.K.'s absence. The order committing L.K. is reversed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE