FILED

May 26 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0125

DA 14-0125

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 146

IN THE MATTER OF:

M.K.S.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI 07-54
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Kristen L. Larson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Kirsten H. Pabst, County Attorney, Erica Grinde, Deputy County
Attorney, Missoula, Montana

Submitted on Briefs:  April 15, 2015
Decided:  May 26, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 M.K.S. appeals from an Involuntary Mental Health Commitment Order entered by the Fourth Judicial District, Missoula County, committing her to the Montana State Hospital (MSH) for a period of not more than three months. We affirm.

¶2 We restate the issue on appeal as follows:

*Whether the failure of the professional person to file a statutorily-required written report in M.K.S.'s civil commitment proceeding was plain error.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 M.K.S. has a long history of treatment for schizophrenia and other mental health illnesses. In addition to being regularly subject to community commitments, primarily at the Western Montana Mental Health Center (WMMHC), M.K.S. has been hospitalized at the MSH on numerous occasions. District Court Judge Robert L. Deschamps has presided over M.K.S.'s proceedings since June of 2007, although it appears M.K.S. has received treatment from WMMHC since 1999.

¶4 In November 2013, M.K.S. stipulated to a six-month community commitment that would expire May 19, 2014. The Community-Based Commitment Order provided that M.K.S. would remain at the Neurobehavioral Unit at St. Patrick Hospital until she was stabilized and could be discharged to Dakota Place; that M.K.S. would keep all of her appointments and follow the recommendations of her treating professionals; and that M.K.S. would take all of her medications, including injectable medications.

¶5 On January 27, 2014, the State filed a "renewed" petition for commitment, stating that law enforcement had taken M.K.S. to the Emergency Room at St. Patrick Hospital

2

after she contacted the WMMHC crisis line and informed them she was suicidal and not safe in her home. WMMHC requested immediate assistance from law enforcement. When law enforcement arrived at M.K.S.'s home, she had laid all of her belongings out on the floor, was holding a knife, and said that she planned to cut her wrists. Emergency room staff requested a mental health evaluation. Thomas Hodgetts, LCSW, a member of the WMMHC crisis response team, evaluated M.K.S. in the emergency room. M.K.S. was uncooperative and belligerent throughout the evaluation, insisting that she had not slept in five years. Based on M.K.S.'s speech and behavior, Hodgetts opined that M.K.S.'s insight, judgment, and impulse control were negligible. Additionally, M.K.S. was responding to internal stimuli. Hodgetts recommended emergency detention at MSH.

¶6 At an initial hearing held on January 27, 2014, M.K.S. was advised of her rights and detained by the court pursuant to § 53-21-122, MCA. A hearing on the State's petition was scheduled for January 30, 2014. The court appointed Jay R. Palmatier, Ph.D., a psychologist with WMMHC, as the professional person to examine M.K.S. prior to the commitment hearing. M.K.S. declined to speak with Palmatier during his evaluation. Palmatier informed M.K.S. that his recommendation to the court would be based on her most recent history if she chose not to speak with him. M.K.S. continued to refuse to cooperate with the evaluation. Palmatier did not file a written report of his findings and recommendations with the court as required by § 53-21-123, MCA.

¶7 At the commitment hearing on January 30, 2014, Palmatier testified that M.K.S. had not been abiding by the terms of her community commitment and had failed to keep

3

numerous appointments. Based on a review of M.K.S.'s records, Palmatier testified that M.K.S. was not taking her oral medications, and that her last injectable medication had been administered ten days late. Palmatier also explained that M.K.S. had refused any in-home assistance, which was significant because M.K.S. had a history of not cooking or eating well on her own. Palmatier explained that M.K.S. had been malnourished in the past.

¶8 Palmatier testified that M.K.S. had largely remained silent during his evaluation, but that he had evaluated M.K.S. numerous times in the past. He testified that his findings and recommendations were based on her recent suicide threat as well as a review of her records from WMMHC and MSH. He stated that MSH was the only available treatment option, and that he believed M.K.S. should remain there for a term of 90 days. Although Palmatier did not provide a written report of his findings and recommendations as required by § 53-21-123(1), MCA, M.K.S. did not object to the absence of a written report. M.K.S. proceeded with the hearing and conducted cross-examination of Palmatier.

¶9 M.K.S. testified on her own behalf, stating that she was no longer suicidal, that she was not a criminal, and that she had not harmed nor was a danger to anyone else. At the end of the proceeding, the District Court found that M.K.S. posed a danger to herself based on her recent suicidal threats, and that a commitment to MSH was necessary to guarantee her safety. The court found that MSH was the least restrictive and most appropriate environment for M.K.S. to receive effective treatment, until she could be discharged to a less restrictive care facility. M.K.S. timely appealed to this Court.

4

## STANDARD OF REVIEW

¶10　This Court reviews a district court's civil commitment order "to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct." *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100. Issues of due process in an involuntary commitment proceeding are subject to plenary review. *In re Mental Health of L.K.*, 2009 MT 366, ¶ 11, 353 Mont. 246, 219 P.3d 1263.

## DISCUSSION

¶11　We note, preliminarily, that an appeal from an order of involuntary commitment is not rendered moot if the 90-day commitment period has ended or the individual has been released, as there is a reasonable expectation that the individual could be subject to the same action again, and the time period is too short to allow full litigation of the appeal. *In re Mental Health of D.V.*, 2007 MT 351, ¶ 32, 340 Mont. 319, 174 P.3d 503. The matter therefore falls within an exception to the mootness doctrine for issues that are "'capable of repetition, yet evading review.'" *In re J.S.W.*, 2013 MT 34, ¶ 11, 369 Mont. 12, 303 P.3d 741 (quoting *In re D.K.D.*, 2011 MT 74, ¶ 14, 360 Mont. 76, 250 P.3d 856).

¶12　*Whether the failure of the professional person to file a statutorily-required written report in M.K.S.'s civil commitment proceeding was plain error.*

¶13　Although we generally will not review issues raised for the first time on appeal, *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694, we have determined that if a constitutional or substantial right is at issue, we may review an unpreserved claim under the plain error doctrine. *State v. Gunderson*, 2010 MT 166,

5

¶ 99, 357 Mont. 142, 237 P.3d 74. In an involuntary commitment proceeding, we may use plain error review to consider unpreserved error "because the respondent's substantial right—liberty—is at stake . . . ." *In re B.O.T.*, 2015 MT 40, ¶ 22, 378 Mont. 198, 342 P.3d 981 (quoting *In re Mental Health of J.D.L.*, 2008 MT 445, ¶ 9, 348 Mont. 1, 199 P.3d 805). We invoke plain error review "'where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.'" *In re J.S.W.*, ¶ 15 (quoting *Gunderson*, ¶ 99). We have repeatedly stated that we will use plain error review sparingly and on a case-by-case basis. *In re D.K.D.*, ¶ 16.

¶14 When an individual invokes the plain error doctrine to request review of issues that were not objected to at trial, our review is discretionary. *In re J.S.W.*, ¶ 16; *Gunderson*, ¶ 99. The plain error doctrine establishes a two-part test, with the burden on the person facing involuntary commitment to meet both parts of the test. *In re J.S.W.*, ¶ 17. Thus, M.K.S must establish that (1) the alleged error implicates a fundamental right; and (2) failure to review the alleged error would result in one of the three consequences stated above. *In re J.S.W.*, ¶ 17. A mere assertion that a constitutional right is implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine. *In re J.S.W.*, ¶ 17 (quoting *Gunderson*, ¶ 100).

¶15 In these proceedings, M.K.S. maintains that her constitutional right not to be deprived of her liberty absent due process of law was violated. M.K.S. argues that

because the statutory requirement for filing a written report was not satisfied, her procedural due process rights were violated, and the judgment of commitment should be vacated. More specifically, M.K.S. asserts that the written report was essential to her ability to defend against the State's petition, and to the District Court's ability to be adequately informed about why Palmatier believed it appropriate to recommend commitment to MSH when, in the past, commitment to a community program had been sufficient. The State argues that although Palmatier did not provide the court with a written report prior to the commitment hearing, Palmatier testified at the hearing, providing the court and the parties ample time to hear his findings and recommendation. The State argues that because M.K.S. failed to object to the lack of a written report, and because the lack of a written report did not cause substantial prejudice or affect her liberty interest, this Court should decline to exercise its discretion under the plain error doctrine to review M.K.S.'s claim.

¶16    "No person shall be deprived of life, liberty, or property without due process of law." Mont. Const. art. II, § 17. An individual facing involuntary commitment has all the rights guaranteed by both the United States Constitution and the Montana Constitution. Section 53-21-115, MCA. Montana's statutory scheme governing involuntary commitment proceedings contains multiple safeguards to protect the due process rights of individuals facing the possibility of being involuntarily committed. Consequently, we have consistently emphasized that our civil commitment laws are to be strictly adhered to in such proceedings. *In re L.L.A.*, 2011 MT 285, ¶ 9, 362 Mont. 464, 267 P.3d 1; *In re Mental Health of J.D.L.*, ¶ 8. The statutes authorizing involuntary

7

commitment are to be applied to ensure that the "'government does not invade an individual's freedom or liberty without due notice, cause and process.'" *In re Mental Health of J.D.L.*, ¶ 8 (quoting *In re the Mental Health of R.M.*, 270 Mont. 40, 45-46, 889 P.2d 1201, 1205 (1995)).

¶17 Section 53-21-123, MCA, provides that a respondent in a civil commitment proceeding must have a mental health examination conducted by a professional person after the initial hearing, and that the professional person must make a written report of the examination to the court and provide copies to both parties. The statutory requirement to file a written report setting forth the findings and recommendations of the professional person guarantees that the person who is the subject of the petition will be provided notice of the medical basis for the petition and have an opportunity to prepare a defense. The requirement is a procedural protection designed to insure that a person is not deprived of his or her liberty without adequate process. We conclude that M.K.S. has identified a constitutional right of due process that has been implicated in these proceedings and has therefore met her burden of establishing the first prong of the test for exercising plain error review.

¶18 In addressing the second prong of the test—whether the claimed error may result in a manifest miscarriage of justice, leave unsettled questions of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process—we must "weigh[ ] the risk of depriving an individual's liberty against the probable value of the procedure in question," in this case, the filing of a written report. *In re N.A.*, 2013 MT 255, ¶ 23, 371 Mont. 531, 309 P.3d 27. "[N]ot all errors of state law amount to

8

deprivation of procedural due process; rather, we employ a flexible balancing test to determine whether a particular safeguard is required in a specific circumstance." *In re N.A.*, ¶ 23 (citing *Engle v. Isaac*, 456 U.S. 107, 121 n.21, 102 S. Ct. 1558, 1568 n.21 (1982) and *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 902-03 (1976)). We have held that when a procedural error results in no substantial prejudice to a party, the error is *de minimus* and does not affect an individual's liberty interest. *In re Mental Health of O.R.B.*, 2008 MT 301, ¶ 30, 345 Mont. 516, 191 P.3d 482. M.K.S. argues that the value of the written report in this instance lies both in her "ability to defend" and in the court's ability to be adequately informed regarding Palmatier's recommendation of a MSH commitment rather than, as in previous proceedings, a community commitment.

¶19 In *N.A.*, this Court held that a professional person's failure to file a report did not amount to plain error where the parties had "effective and sufficient notice of [the professional person's] findings" and the court had "ample opportunity to hear [the professional person's] findings and conclusions about N.A.'s mental health." *In re N.A.*, ¶ 24. Similarly, this Court concluded in *O.R.B.*, ¶ 30, that a professional person's failure to include a statement of recommendations was harmless error. We determined that "the testimony at the initial hearing, O.R.B.'s emergency detention, and the written report's conclusions were together sufficient to put O.R.B. 'on notice' that the recommendation would be for her commitment." *In re O.R.B.*, ¶ 31. We distinguished the case of *R.M.*, 270 Mont. at 45-46, 889 P.2d at 1205, where we reversed a civil commitment because the district court never appointed a professional person and no evaluation was conducted after the initial probable cause determination. *In re O.R.B.*, ¶ 30.

9

¶20 Based on our review of the record, we conclude that the failure to file a written report with the court did not prejudice M.K.S.'s ability to defend against allegations contained in the petition or presented by Palmatier's testimony. Palmatier was present for and testified at the hearing. M.K.S. had notice prior to the hearing that Palmatier was the appointed professional person who would evaluate her and testify at trial; Palmatier had evaluated M.K.S. numerous times in the past; Palmatier was familiar with M.K.S.'s treatment at WMMHC; and Palmatier gave his assessment of M.K.S.'s mental condition, the factual basis for his assessment, and his professional recommendation regarding treatment. M.K.S.'s counsel had the opportunity to cross-examine Palmatier, and did so without any objection to the absence of a written report. If M.K.S.'s counsel believed the failure to file a written report inhibited her defense or preparation, counsel could have objected to the lack of a report and the defect could have been remedied.

¶21 Moreover, after acknowledging that the information gained from his evaluation was "almost nonexistent," Palmatier proceeded to detail the various sources of information used in developing his findings and recommendation. The most recent history, as detailed in the district court record, included not only a threat of suicide by M.K.S., in which law enforcement reported that she had a knife in hand, but also the fact that MSH had been conducting safety checks on M.K.S. every fifteen minutes. Palmatier testified that there were no local hospital alternatives. Indeed, the Neurobehavioral Unit at St. Patrick refused to accept M.K.S. into their facility due to her uncooperative behavior.

¶22 The failure to file a report with the court as statutorily directed does implicate M.K.S.'s procedural right to due process. However, M.K.S. has failed to meet her burden to demonstrate the second prong of the plain error test—that failing to review the claimed error would result in a manifest miscarriage of justice, leave unsettled questions regarding the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *In re J.S.W.*, ¶ 15; *Gunderson*, ¶ 99. The court was adequately informed as to the history and evolution of M.K.S.'s illness and the prior recommendations of treatment providers. Counsel for M.K.S. had the opportunity—and exercised that opportunity—to examine Palmatier regarding his findings and recommendations.

¶23 We realize that management of mental health proceedings such as these is difficult, especially given statutory deadlines. M.K.S. has had proceedings before Judge Deschamps since 2007, including four petitions for commitment and ten petitions to extend commitment. Although the parties and the court are likely very familiar with M.K.S., familiarity does not satisfy statutory requirements. We decline to find plain error under the circumstances presented here, but we recognize the possibility that failure to file a written report with the court as statutorily required may constitute prejudicial error.

## CONCLUSION

¶24 Although we find that M.K.S.'s fundamental right to procedural due process was implicated in these proceedings, we conclude M.K.S. has failed to demonstrate that the absence of a written report substantially impacted this right in a manner that would leave unsettled the fundamental fairness of the proceedings, compromise the integrity of the

11

judicial process, or create a manifest miscarriage of justice. We therefore decline to reverse the judgment of commitment based on the plain error doctrine.

¶25    Affirmed.


                                        /S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE