FILED

04/04/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0129

DA 21-0129

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 58N

IN THE MATTER OF:

T.R.S.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DI 21-4-RW
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

          Eileen Joyce, Butte-Silver Bow County Attorney, Mollie Maffei, Deputy
County Attorney, Butte, Montana

              Submitted on Briefs:  March 1, 2023

                    Decided:  April 4, 2023

Filed:

_____
                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 T.R.S. appeals from the Findings of Fact, Conclusions of Law and Order issued by the Second Judicial District Court, Butte-Silver Bow County, on January 27, 2021. T.R.S. asserts three reversible errors: (1) the District Court ignored its diversion order and proceeded to trial on an illegal health evaluation; (2) there was insufficient evidence to find T.R.S. suffered from a mental disorder and thus the District Court erred in concluding T.R.S. was unable to care for his basic needs because of a mental disorder; and (3) alternatively, the District Court's commitment orders lacked a detailed statement of facts as to what constituted T.R.S.'s mental disorder. We affirm.

¶3 On January 12, 2021, the State filed a petition for involuntary commitment. The State sought involuntary commitment based on T.R.S.'s failed suicide attempt when he attempted to shoot himself in the head. The January 12, 2021 Crisis and Risk Assessment of T.R.S. was attached to the petition in which T.R.S was diagnosed with major depressive disorder, recurrent, moderate with reported symptoms of depression, anhedonia, lethargy, apathy, and irritability. With regard to "Suicidal Ideation/Intentions," T.R.S. was noted to have current ideation, ideation history, previous attempts, impulsiveness, viable plan, available means, and settling of affairs. As T.R.S. initially agreed to voluntary treatment

2

with in-patient placement to stabilize his acute suicidal symptoms and emotional dysregulation, involuntary commitment was not endorsed.[1]

¶4      An initial hearing was held with T.R.S. appearing by two-way video communication from the Montana State Hospital (MSH).  At that hearing T.R.S. was advised of his rights, appointed counsel, and appointed a friend.  A mental health evaluation was also ordered and the commitment hearing was scheduled for the following day.  At the time of the commitment hearing on January 14, 2021, T.R.S.'s counsel sought continuance of the hearing to look into options for a diversion program.  The State did not object and the court continued the hearing to January 19, 2021.  At the outset of the hearing on January 19, 2021, the District Court explained the basis for postponement of the hearing and advised it had allowed another professional evaluation to be conducted that morning.  T.R.S.'s counsel confirmed she and the appointed friend were present at the time the evaluation was conducted.   The professional person who conducted the evaluation, Amanda Krieg, testified in support of a 14-day diversion program at St. Pete's.[2]  She testified she expected St. Pete's to accept T.R.S. but that there was no guarantee in this regard.  T.R.S.'s appointed friend concurred with this proposed inpatient diversion and T.R.S.'s counsel did not object. The District Court then suspended the involuntary commitment proceeding pending the inpatient diversion to St. Pete's.

---

[1] Prior to effectuating the voluntary placement, T.R.S. attempted to leave against medical advice and a temporary hold was placed to allow the State to file its petition for involuntary commitment.

[2] St. Pete's refers to St. Peter's Hospital in Helena.

¶5     The court reconvened the hearing on January 22, 2021. At the outset, the District Court explained that St. Pete's declined or did not have a bed for T.R.S. such that an inpatient diversion there was not possible. The court advised another evaluation of T.R.S. had occurred that morning and confirmed T.R.S.'s counsel and friend were present at that evaluation. The court then proceeded with the commitment hearing without objection. Upon completion of the State's evidentiary presentation T.R.S.'s counsel sought dismissal not because T.R.S. did not suffer from a mental disorder but rather argued T.R.S. "may still suffer from depression and anxiety" and although "there was an issue with his suicide attempts last week," he was not currently suicidal or homicidal. She asserted T.R.S. had been at MSH for over a week which had provided him ample time to take advantage of the services there. He was now taking medications and he had identified two doctors he would contact if released. The District Court expressed, based on the concerns raised by the professional person, that although T.R.S. had improved, without a high degree of community support T.R.S. would again become suicidal and not be able to provide for his basic safety needs. The District Court believed discharge planning to assure appropriate community treatment services were available to T.R.S. was crucial and without such T.R.S. would predictably deteriorate and become a danger to himself and thus be unable to provide for his basic safety. As such, at the close of the hearing, the District Court orally granted the State's petition for involuntary commitment and subsequently issued a written order on January 27, 2021.

¶6     We review a district court's commitment order to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct. A finding of fact is clearly

erroneous if not supported by substantial credible evidence, the district court misapprehended the effect of the evidence, or this Court has a definite and firm conviction upon review of the record that the district court otherwise erred. *In re C.K.*, 2017 MT 69, ¶ 10, 387 Mont. 127, 391 P.3d 735. We view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *In re C.V.*, 2016 MT 307, ¶ 15, 385 Mont. 429, 384 P.3d 1048.

¶7      T.R.S. asserts the District Court committed reversible error when it ignored its diversion order and proceeded to trial in reliance on an illegal mental health evaluation. Upon being advised that St. Pete's declined to accept T.R.S. into a diversion program, the District Court authorized another professional evaluation and reconvened the commitment hearing. T.R.S. did not object or raise any issues below with regard to the additional evaluation—at which both T.R.S.'s attorney and friend were present—or proceeding with the commitment hearing on the State's petition for involuntary commitment. We generally will not review issues raised for the first time on appeal and use plain error review sparingly. *In re M.K.S.*, 2015 MT 146, ¶ 13, 379 Mont. 293, 350 P.3d 27. We decline to exercise plain error review as the failure to do so does not result in manifest miscarriage of justice, leave unsettled a question of fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *In re M.K.S.*, ¶ 13. From our review of the record, it is clear the suspension of the involuntary commitment process was dependent upon T.R.S.'s acceptance by St. Pete's into an inpatient diversion program, which acceptance was not guaranteed. Vacating the suspension by proceeding with the commitment hearing under these circumstances with an updated professional evaluation

and without objection of T.R.S. does not establish the criteria necessary for plain error review.[3]

¶8    T.R.S. next asserts there was insufficient evidence to find he suffered from a mental disorder and thus, the District Court erred in concluding T.R.S. was unable to care for his basic needs because of his mental disorder. Upon review of the record in its entirety in the light most favorable to the State, T.R.S. did not at any time contest that he suffered from a mental disorder—anxiety and depression with suicidal history, ideation, and attempts. Indeed, at the conclusion of the commitment hearing T.R.S.'s counsel conceded on-the-record, without qualification, that T.R.S. suffers from anxiety and depression and as a result of such he made recent suicide attempts. Upon determining T.R.S. had a mental disorder, the District Court appropriately determined the criteria for commitment under § 53-21-126, MCA, were met. T.R.S.'s anxiety and depression caused him to attempt self-injury—attempted suicide by use of a firearm—and because of his ongoing depression with suicidal ideation and history of attempt this resulted in T.R.S. being substantially unable to provide for his own basic needs, namely his safety. Although his anxiety and depression were somewhat improved with the initial treatment he received at MSH, if appropriate community-based treatment services were not immediately available to him

---

[3] It is noted that § 53-21-1205(5), MCA, requires the court to proceed with a commitment hearing when commitment proceedings have been suspended to permit respondent to be diverted to short-term inpatient treatment and the county attorney objects to release of the respondent to the community from the diversion program. Here, involuntary commitment proceedings were suspended and due to unavailability of a bed, release from voluntary diversion was, in essence, occurring. The State implicitly objected to T.R.S.'s release into the community as it did not seek to dismiss its petition and proceeded to seek T.R.S.'s involuntary commitment.

upon discharge from MSH, they would predictably result in deterioration of T.R.S.'s mental condition to the point he will become a danger to himself and be unable to care for his basic needs, namely his safety.

¶9 Finally, as an alternative argument, T.R.S. asserts the District Court committed reversible error as its involuntary commitment orders do not contain a detailed statement of facts as required by § 53-21-127(8)(a), MCA, as to T.R.S.'s mental health disorder. While the District Court's written findings of fact could have been more detailed, and we would expect such in the future, we conclude they, in conjunction with the court's oral order of commitment, were sufficient to satisfy the requirements of § 53-21-127(8), MCA. The District Court found T.R.S. suffered from a mental disorder requiring state intervention—commitment—as evidenced by the testimony of professional person, Shayna Chupein.[4] The court also determined that, although T.R.S. had experienced some improvement while at MSH, he was in need of ongoing treatment and support without which he is unable to provide for his own basic needs. There was insufficient discharge planning to assure immediate community services and treatment upon discharge such that T.R.S. would predictably deteriorate to the point of becoming a danger to himself.

¶10 We have reviewed the evidence of record and, viewing it in the light most favorable to the State, conclude the District Court did not abuse its discretion in finding commitment

---

[4] Ms. Chupein testified in her clinical interview of T.R.S. he endorsed continued anxiety and depression and that without further inpatient stabilization he would not be able to remain safe and would experience something similar to what happened before—a significant but failed suicide attempt.

to the Montana State Hospital to be the least restrictive commitment setting for T.R.S. to receive treatment to stabilize his mental health condition. We further conclude the District Court's conclusion of law to be correct.

¶11     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12     Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE