DA 12-0468

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 140

IN THE MATTER OF:

S.C.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DI 06-111B
Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender, Kristen L. Larson, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General; Helena, Montana

            Ed Corrigan, Flathead County Attorney; Kalispell, Montana

                    Submitted on Briefs:  February 6, 2013

                                    Decided:  May 28, 2013

Filed:

                            _____
                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellant S.C. appeals from a determination in the Eleventh Judicial District Court, Flathead County to grant the State of Montana's (State) petition to extend S.C.'s involuntary outpatient mental health treatment plan. S.C. alleges that the State failed to comply with the timeliness requirements necessary to extend the plan as provided in § 53-21-198, MCA. We reverse.

¶2 We address the following issue on appeal:

¶3 *Whether the District Court properly granted the State's third request to extend S.C.'s involuntary treatment plan?*

## FACTS AND PROCEDURAL HISTORY

¶4 Local police officers brought S.C. to the Kalispell Regional Medical Center's emergency room on September 20, 2011. S.C. appeared to be suffering from significant depression and disorganization of thought activity. Katie Henley (Henley), a psychiatric nurse practitioner for the Western Montana Mental Health Center, met with S.C. to observe S.C.'s behavior. Henley observed that S.C.'s mental condition had deteriorated from a point that Henley had determined to be S.C.'s "baseline." The Kalispell Regional Medical Center transferred S.C. to the Pathways Treatment Center.

¶5 Dr. James Rougle (Dr. Rougle), a psychiatrist at the Pathways Treatment Center, evaluated S.C. Among other things, Dr. Rougle interviewed S.C.'s father (Father). Father reported that S.C. had become increasingly paranoid. Father reported that S.C. heard voices. Father increasingly feared S.C. Father felt unsafe with S.C. living at home. Dr. Rougle

2

diagnosed S.C. as bipolar. Dr. Rougle also determined that S.C was suffering from an episode of depression. Dr. Rougle concluded that S.C.'s depression was making it extremely difficult for S.C. to maintain his baseline mental state.

¶6     The District Court conducted a hearing on October 6, 2011. Dr. Rougle testified that S.C. was incapable of meeting his own needs. Dr. Rougle recommended that S.C. be committed to the Montana State Hospital (MSH) so that S.C. could receive proper medical care to allow him to return to his baseline. Dr. Rougle further testified that MSH provided the least restrictive environment where someone could look after S.C.'s daily needs. Father testified that he locked his bedroom door at night because he feared what S.C. might do. Father reiterated that he was unwilling to allow S.C. to return home until S.C.'s mental state improved.

¶7     The District Court determined that S.C. should be committed involuntarily to MSH. The court ordered that S.C.'s period of commitment was "not to exceed ninety days, unless extended as provided by law." S.C.'s commitment was to expire on January 6, 2012.

¶8     The State conditionally released S.C. from MSH on December 9, 2011. The conditions of S.C.'s release included that he attend sessions three days a week at the Western Montana Mental Health Center in Kalispell. The State further required that S.C. continue to take his prescribed medication.

¶9     The State filed the first petition to extend S.C.'s conditional release on January 11, 2012. S.C.'s commitment period had expired five days earlier on January 6, 2012. S.C. did

not request a hearing or challenge the State's petition. The District Court granted the petition to extend S.C.'s release conditions for a period of 90 days through April 6, 2012.

¶10 The State filed a second untimely petition to extend S.C.'s conditional release on March 29, 2012. Section 53-21-198(2), MCA, requires that any petition to extend must be filed "[n]ot less than 2 calendar weeks" before the expiration of a person's detention or extension period. The State's petition should have been filed no later than March 23, 2012. S.C. again did not request a hearing or challenge the State's petition. The District Court granted the State's petition to extend S.C.'s release conditions for 90 additional days through July 6, 2012.

¶11 The State filed a third untimely petition to extend S.C.'s conditional release on June 27, 2012. Section 53-21-198(2), MCA, required that the State file its motion to extend no later than June 22, 2012. This time S.C. requested a hearing to challenge the State's petition. The Office of Public Defender represented S.C. at the July 6, 2012, hearing. S.C. argued that the State's third petition to extend S.C.'s commitment period failed to comply with the timeliness requirements set forth in § 53-21-198, MCA. The District Court granted the State's petition after the hearing. The court extended S.C.'s release conditions through October 6, 2012. S.C. appeals.

## DISCUSSION

¶12 *Whether the District Court properly granted the State's third request to extend S.C.'s involuntary treatment plan?*

4

¶13 The State concedes that it failed to comply with the time requirements provided in § 53-21-198, MCA. The State argues, however, that S.C. should be required to show that the State's failure to comply with the time requirements caused prejudice to S.C. S.C. contends that the State's failure to comply with the time requirements set forth in § 53-21-198, MCA, represents the lesser of the State's omissions. S.C. argues that the State's failure to file its first motion to extend S.C.'s conditional release until *after* the expiration of S.C.'s commitment period deprived the District Court of the authority to extend the conditions of S.C's release.

¶14 Section 53-21-198(2), MCA, clearly sets forth that any petition to extend must be filed "[n]ot less than 2 calendar weeks" before the expiration of a person's detention or extension period. We evaluated the mandates of the statute in *In re Morlock*, 261 Mont. 499, 862 P.2d 415 (1993). Morlock had been committed to the Montana Development Center (MDC). The district court granted an untimely petition to extend Morlock's commitment after the expiration of Morlock's original commitment period. Morlock filed a motion to dismiss the petition as untimely under § 53-20-128, MCA (1993). Neither party disputed that the recommitment petition had been filed untimely. *Morlock*, 261 Mont. at 500, 862 P.2d at 416.

¶15 The Court determined that Montana's civil commitment laws are to be "strictly followed." *Morlock*, 261 Mont. at 501, 862 P.2d at 416. The legislature provided that a petition for recommitment could be granted "only if renewal of the commitment order is requested at least 15 days before the expiration of the commitment order." *Morlock*, 261

5

Mont. at 501, 862 P.2d at 416 [internal citations omitted]. The Court interpreted the time period attached to the filing requirement as "mandatory." *Morlock*, 261 Mont. at 501, 862 P.2d at 416. The Court further provided that the State's failure to comply with the time requirements left the District Court "without authority to recommit Morlock." *Morlock*, 261 Mont. at 501, 862 P.2d at 416.

¶16 The State likens the "[n]ot less than 2 calendar weeks" requirement of § 53-21-198(2), MCA, to the numerous filing or notice deadlines of the type addressed in *BNSF Ry. v. Cringle*, 2010 MT 290, ¶ 13, 359 Mont. 20, 247 P.3d 706. We determined that "none of the judicially or statutorily created procedural deadlines deprive a district court of subject matter jurisdiction." *BNSF Ry.*, ¶ 17. This argument fails to address, however, the State's failure to file its first petition to extend S.C. conditions of release until after S.C.'s period of commitment had expired.

¶17 The period for S.C.'s commitment expired on January 6, 2012. The State waited until January 11, 2012, to file its first petition to extend S.C.'s conditional release. The State argues that S.C. waived this defect due to his failure to object to the State's first untimely petition. The expiration of S.C.'s commitment period ended the case. Nothing remained for S.C. to waive. The State remained free at that point to file a new petition for involuntary commitment. The expiration of S.C.'s commitment period, however, left the District Court with no proceeding over which it could exercise continuing jurisdiction.

¶18 Consequently, the District Court was "without authority" to extend the period of S.C.'s conditions of release when the State filed the second and third petitions. *Morlock*, 261

Mont. at 501, 862 P.2d at 416. The "[n]ot less than two calendar weeks" filing deadline could be construed in the nature of a categorical time bar that would be subject to forfeiture and waiver. The 90-day statutory commitment period could not. The expiration of the 90-day statutory commitment period leaves a court without power to take further action. *See State v. Tison,* 2003 MT 342, ¶ 15, 318 Mont. 465, 81 P.3d 471 (determining that expiration of the 90-day commitment period prescribed by § 46-14-221, MCA, left the district court without authority to take further action).

¶19     The District Court's lack of authority to extend the period of S.C.'s conditions of release applies, in turn, to the State's second petition of March 29, 2012, and the State's third petition of June 27, 2012. As a result, we must vacate the District Court's orders of April 4, 2012, and July 6, 2012, that granted the State's second and third petitions. We emphasize that the State remains free to file a new petition to seek S.C.'s involuntary commitment. Any attempts by the State to extend or modify a future voluntary commitment must be filed within the time periods set forth in § 53-21-198, MCA.

¶20     Reversed.

/S/ BRIAN MORRIS

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON

7