Chief Justice Mike McGrath delivered the Opinion of the Court.
***99 ¶1 B.A.F. appeals from a June 6, 2017 Tenth Judicial District Court order extending his commitment to the Montana Mental Health Nursing Care Center (Care Center). We affirm.
¶2 We restate the issue on appeal as follows:
Whether the requirements of § 53-21-119(1), MCA, applied when B.A.F. requested a hearing to stipulate to the extension of his ***100 involuntary commitment.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 B.A.F. is a sixty-six-year-old man with a long-standing history of mental illness. B.A.F. suffers from schizophrenia, paranoid type, and antisocial personality disorder. In 2015, B.A.F. was committed to the Montana State Hospital (MSH) for the thirteenth time. On April 27, 2016, after several months at MSH, B.A.F. stabilized and transitioned to a community setting in Helena, Montana. However, B.A.F.'s condition quickly deteriorated when he quit taking his medication and, on May 10, 2016, B.A.F. returned to MSH. On March 11, 2016, B.A.F.'s commitment to MSH was extended for a period of one year. In September 2016, B.A.F. was transferred to Care Center in Lewistown, Montana.
¶4 On February 21, 2017, Susan Stevens (Stevens), a mental health professional at Care Center, petitioned the Tenth Judicial District Court to extend B.A.F.'s commitment. The District Court appointed B.A.F. counsel and appointed Stephen Cummings as B.A.F.'s friend. The Court appointed Stevens to examine B.A.F. and submit a mental health assessment.
¶5 In March 2017, B.A.F. requested a hearing through counsel. In the request, his counsel asserted: "[B.A.F.] wishes to stipulate to the petition for commitment, but requests a hearing to put on the record that he is capable of making an intelligent and knowing decision." The State did not object and the District Court set a hearing to approve the stipulation for two and a half months later, ordering the commitment extended in the meantime. On June 6, 2017, the District Court heard testimony from B.A.F. and Mr. Cummings. Below is B.A.F.'s testimony in its entirety:
*720 B.A.F.'s Counsel: And just for the record Your Honor I have met with [B.A.F.] a couple times and he has indicated that he is willing to stipulate and continue his care here as long as his social worker is working with him to explore other options .... [B.A.F.] will you state your name please for the record?
B.A.F.: [B.A.F.]
Counsel: And how are you doing right now?
B.A.F.: Fine. I can't think or comprehend very well though because of this certain (unintelligible) of the needle injections instead of the tablet form.
Counsel: And so you've ... we've discussed that you request that the staff work with you and maybe try to transition you back to taking tablets instead of the injections that you receive?
***101 B.A.F.: Yes because I lost my memory pattern taking that the injection form and my thought processes, my memory pattern from day to day I've lost.
Counsel: And are the ... does the staff treat you well here?
B.A.F.: They talk behind my back here.
Counsel: Okay.
B.A.F.: Some of them do, not all of them.
Counsel: But for the most part they work well with you?
B.A.F.: Yeah.
Counsel: And so you've indicated that you would like to work with your social worker and that's Teresa, to explore other options is that correct?
B.A.F.: Yeah.
Counsel: And specifically where would you like to go right now?
B.A.F.: Missoula, Montana.
Counsel: Okay. And so, you're willing to continue your care here while Teresa works on filling out applications for you for facilities in Missoula?
B.A.F.: Yes, she's sure taking her time helping me out though.
Counsel: Okay. And at this point you're willing to continue taking your meds?
B.A.F.: Yes.
Counsel: And do you feel that those medications are helpful for your mental health and your physical health?
B.A.F.: I don't know. I ruined my central nervous system taking this medication. Sometimes my left and right arm shake extremely bad.
Counsel: And so you'd like to see if you could get some medical treatment for your shaking arms as well?
B.A.F.: I've talked to two doctors already. They don't know what's going on in my arms because they shake like this.
Counsel: Okay. Well is there anything else that you want the Court to know right now [B.A.F.]?
B.A.F.: I think they gave me some type of poisoning that ruined my central nervous system and my blood veins in my arms have all disappeared, shriveled up, shrunk up. Some type of poisoning they are giving me through medication.
Counsel: Okay.
B.A.F.: They want me to die off gradually I guess.
Counsel: But you're willing to continue your stay here and work with the staff correct?
B.A.F.: Yes.
***102 Counsel: Okay. I have nothing further from [B.A.F.] Your Honor.
At the conclusion of the hearing the District Court entered an oral order recommitting B.A.F. to the Care Center for one year "unless released sooner," with authorization to administer medications involuntarily. The District Court issued a written order on June 29, 2017, further explaining the order based on the record, B.A.F.'s stipulation, and the evidence presented. B.A.F. now appeals.
STANDARD OF REVIEW
¶6 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. In re T.S.D ., 2005 MT 35, ¶ 13, 326 Mont. 82, 107 P.3d 481. We view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings.
*721 In re C.V ., 2016 MT 307, ¶ 15, 385 Mont. 429, 384 P.3d 1048. Whether a district court's findings of fact satisfy statutory requirements is a question of law reviewed for correctness. In re D.L.B ., 2017 MT 106, ¶ 7, 387 Mont. 323, 394 P.3d 169.
DISCUSSION
¶7 Title 53, chapter 21, MCA, provides specific procedural and substantive requirements for involuntary civil commitment proceedings. The statutes provide that at least two weeks before an involuntary commitment expires the responsible health care professional may petition the court to extend commitment upon a specified showing of need for the extension. Section 53-21-128(1)(a), MCA. Absent the right to a jury trial, the extension procedure "must be the same in all respects as the procedure" required for an initial mental health commitment. Section 53-21-128(1)(c), MCA ; In re D.L.B ., ¶ 8.
¶8 If the district court finds that the individual continues to suffer from a mental disorder and requires commitment under any of the criteria of § 53-21-126(1), MCA, then the court shall order commitment in accordance with § 53-21-127, MCA. Section 53-21-128(1)(d), MCA ; In re D.L.B ., ¶ 9. To extend a prior involuntary mental health commitment the statutes require district courts to make specific findings of fact. In re D.L.B ., ¶ 10. Section 53-21-119(1), MCA, also provides, "A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of ***103 respondent ...."
¶9 Here, it is clear that the parties and the Court were proceeding under a stipulation. This Court has previously held that a district court "may not accept a stipulation to an involuntary commitment without first making an affirmative determination on the record-based upon the evidence presented, including the representations of the respondent and/or his attorney and friend-that the person to be committed understands his procedural rights, and that he waives those rights intentionally and knowingly." In re A.M ., 2014 MT 221, ¶ 15, 376 Mont. 226, 332 P.3d 263. The sufficiency of the record depends on the facts and circumstances of each case. In re A.M ., ¶ 11. It is clear from the exchange with the Court that B.A.F. was aware of who and where he was, and the nature and purpose of the proceeding. His goal was to obtain a new placement in Missoula, and he understood he would remain at the Care Center until a new arrangement was made. B.A.F.'s attorney and his friend confirmed his intent.
¶10 On appeal, B.A.F. argues that the District Court's recommitment should be reversed because the record lacked evidence demonstrating B.A.F. understood his statutory rights, the nature of the proceeding, and intentionally and knowingly waived those rights.
¶11 The key consideration here is whether the requirements of § 53-21-119(1), MCA, apply in this case. If they do, this Court agrees with B.A.F. that the District Court did not obtain a valid waiver of rights. However, we conclude that the statute does not apply because the June 6, 2017 hearing was not a hearing on the State's petition for recommitment.
¶12 Section 53-21-128(1)(b), MCA, allows the patient, the patient's next of kin, the court-appointed friend, or the patient's counsel to request a hearing upon receipt of notice of a petition for extension of the commitment period. "[W]hen a hearing has been requested," the procedure on the petition for extension "must be the same in all respects as the procedure on the petition for the original 3-month commitment," with the exception of the right to a jury trial. Section 53-21-128(1)(c), MCA. "If a hearing is not requested," § 53-21-128(1)(b), MCA, authorizes the court to order the recommitment without a hearing. The statute plainly triggers the procedural requirements for commitment hearings-which include § 53-21-119 's requirements for obtaining a valid waiver of rights at such hearings-only when a patient seeks a hearing on the recommitment petition .
¶13 B.A.F. did not seek a hearing on Stevens' petition to extend his commitment. He sought a hearing only to put on the record that he was capable of making a knowing *722 decision to stipulate to his ***104 commitment. The recommitment statute does not require such a hearing, nor did it require the District Court at that hearing to follow the procedure on the petition for the original three-month commitment.
CONCLUSION
¶14 The District Court's order extending B.A.F.'s commitment was not required to conform to the standard set forth in § 53-21-119(1), MCA, and B.A.F. made it clear to the Court that he understood his circumstances and intentionally agreed to the extension of care.
¶15 Affirmed.
We Concur:
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
BETH BAKER, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.