FILED

10/05/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0607

DA 19-0607

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 257

IN THE MATTER OF:

B.A.F.,

      An Alleged Mentally Ill Person.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DI-14-2017-07
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Damon Martin, Assistant Attorney General, Helena, Montana

            Kent M. Sipe, Fergus County Attorney, Craig R. Buehler, Deputy County Attorney, Lewistown, Montana

                    Submitted on Briefs:  July 28, 2021

                            Decided:  October 5, 2021

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 B.A.F. has suffered from mental illness for most of his life. In 2016, he was involuntarily committed to the Montana Mental Health Nursing Care Center (MMHNCC) in Lewistown, Montana, and has resided there ever since. He appeals the Tenth Judicial District Court's Order for Recommitment on the ground that the State failed to obtain a post-petition mental health evaluation as required by the Montana civil commitment statutes. We affirm.

> *Did the District Court commit plain error by issuing a recommitment order without obtaining the statutorily mandated post-petition evaluation under §§ 53-21-122(a)(2), -123(1), and -128(1)(c), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 B.A.F. was involuntarily committed to the MMHNCC for his mental illness in 2016. The District Court extended B.A.F.'s initial commitment period by one year each in 2017, 2018, and 2019. B.A.F. appealed his 2017 recommitment to this Court, and we affirmed. *In re B.A.F.*, 2019 MT 57, ¶ 1, 395 Mont. 98, 436 P.3d 718 (*B.A.F. I*). B.A.F. has remained under the care and supervision of the MMHNCC since March 2016. He now appeals the District Court's 2019 Order for Recommitment.

¶3 B.A.F. is diagnosed with paranoid schizophrenia and antisocial personality disorder and takes seven different medications. He has delusions of government involvement in his placement at the MMHNCC, believes he is being poisoned there, and experiences auditory and visual hallucinations. According to Susan Stevens, an MMHNCC psychology

2

specialist and certified mental health professional, B.A.F. is in denial about his mental illness and has a history of noncompliance with medication and treatment programs.

¶4     Stevens initiated all three recommitment proceedings in B.A.F.'s matter and submitted mental health assessments with each petition. On June 20, 2019, Stevens filed the Petition for Recommitment that ultimately led to this appeal. The Petition includes comprehensive MMHNCC records related to B.A.F.'s care and treatment, and a separately filed mental health assessment that Stevens conducted. The records show that B.A.F. is independent in some ways, such as personal hygiene, expressing his needs, choosing daily activities, and following a schedule, but that he also exhibits some persistent difficulties with his mental and behavioral health.

¶5     Stevens usually relies on six sources for her mental health evaluations: relevant social history review; relevant psychiatric history review; a clinical observation; a review of medical records; an interview with the resident; and a "mental state" examination. Because B.A.F. refused the interview and mental state examination on the advice of his attorney, Stevens based her assessment of him on only the first four sources.

¶6     The relevant psychiatric history review in the mental health assessment indicates that B.A.F. continues to experience psychotic episodes and to resist his prescribed medications. In May 2019, B.A.F. was transported to the MMHNCC secured behavioral unit due to an increase in his psychosis, hallucinations, delusions, and paranoia. He expressed a belief that the staff and his peers were attempting to harm him and that his roommate had killed B.A.F.'s brother.

¶7     The medical records review in the mental health assessment includes a report prepared by B.A.F.'s psychiatrist in March 2019, which states that B.A.F. has never had "any sustained period of time" without experiencing psychosis at the MMHNCC. The medical records review also reveals that B.A.F. expressed paranoid delusions to staff as recently as June 2019, shortly before Stevens filed her Petition.

¶8     After Stevens filed the Petition, the District Court appointed Stevens as B.A.F.'s "professional person" and ordered her to submit a mental health evaluation of B.A.F., but Stevens never submitted a post-petition evaluation. The only mental health assessment on file was the one submitted with the Petition.

¶9     In August 2019, two months after the Petition was filed, the District Court held a contested hearing for recommitment. Stevens and Heidi Southworth, the MMHNCC director of nursing, testified at the hearing. Southworth stated that B.A.F. is examined by a physician at least every 60 days and by a psychiatrist at least twice per year. If he is released from the MMHNCC, Southworth worries that B.A.F. will stop taking his medications and decompensate. This danger, she attested, is minimized at the MMHNCC because the staff can administer injections involuntarily. Stevens also provided lengthy testimony regarding B.A.F.'s history and mental illness. She testified that B.A.F. presents a danger to himself and others and that he is incapable of caring for himself due to his medication noncompliance, delusions, and psychosis. Though they acknowledged that B.A.F. made slight improvements in the summer of 2019, both Southworth and Stevens opined that his recommitment to the MMHNCC is necessary.

4

¶10 On August 27, 2019, the District Court issued an order recommitting B.A.F. to the MMHNCC for a period of one year. The court found that the MMHNCC is the least restrictive environment for B.A.F. and that the staff are equipped to handle his psychiatric symptoms. The court specifically referenced the MMHNCC's ability to administer B.A.F.'s medications involuntarily, if needed.

## STANDARD OF REVIEW

¶11 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re B.H.*, 2018 MT 282, ¶ 9, 393 Mont. 352, 430 P.3d 1006 (citation omitted).

## DISCUSSION

¶12 B.A.F. argues that the District Court erred when it recommitted him without a post-petition mental health evaluation by a court-appointed professional person, as required by §§ 53-21-122(2)(a), -123(1), and -128(1)(c), MCA. He challenges the District Court's reliance on Stevens's two-month-old, *pre-petition* evaluation, as opposed to a post-petition evaluation. The oversight, he maintains, was prejudicial because the pre-petition evaluation did not reflect more recent improvements to his mental health.

¶13 Acknowledging that he did not object to the State's failure to obtain a post-petition evaluation in the District Court, B.A.F. seeks plain-error review on appeal. We may review an unpreserved claim under the plain error doctrine when a constitutional or substantial right is at issue. *In re M.K.S.*, 2015 MT 146, ¶ 13, 379 Mont. 293, 350 P.3d 27 (citation omitted). Involuntary commitment proceedings implicate a substantial right

because a liberty interest is at stake. *In re M.K.S.*, ¶ 13. Therefore, we may analyze B.A.F.'s unpreserved post-petition evaluation argument under the plain error doctrine.

¶14 B.A.F. must establish that "(1) the alleged error implicates a fundamental right[,] and (2) failure to review the alleged error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *In re B.H.*, ¶ 16 (citation and quotation omitted).

¶15 Civil commitments in Montana are governed by Title 53, chapter 21, MCA. The purpose of the statutes is to secure for each person requiring commitment "the care and treatment suited to the needs of the person . . . with full respect for the person's dignity and personal integrity," while also ensuring "that due process of law is accorded any person" requiring commitment. Section 53-21-101, MCA. "The statutes authorizing involuntary commitment are to be applied to ensure that the government does not invade an individual's freedom or liberty without due notice, cause, and process." *In re M.K.S.*, ¶ 16 (citation and quotation omitted). "We require strict adherence to our civil commitment statutes, 'given the utmost importance of the rights at stake[.]'" *In re B.H.*, ¶ 18 (quoting *In re R.H.*, 2016 MT 329, ¶ 10, 385 Mont. 530, 385 P.3d 556).

¶16 Section 53-21-121, MCA, mandates that a petition for civil commitment must contain "the purported facts supporting the allegation of a mental disorder, including a report by a mental health professional if any[.]" Section 53-21-121(2)(c), MCA. "Once presented with a petition, a district court must first consider whether probable cause exists to support the petition." *In re D.H.*, 270 Mont. 480, 482, 893 P.2d 330, 332 (1995)

6

(interpreting § 53-21-122(2)(a), MCA). Having found probable cause for the commitment, the court must "appoint a professional person" to conduct a mental health evaluation. *In re D.H.*, 270 Mont. at 482, 893 P.2d at 332 (interpreting § 53-21-122(2)(a), MCA). The post-petition mental health evaluation must be conducted "without unreasonable delay." Section 53-21-123(1), MCA.

¶17 Section 53-21-128, MCA, governs the procedure on petitions for recommitment. It makes clear that, when a hearing is requested, the procedure on a petition for recommitment "must be the same in all respects as the procedure on the petition for the original . . . commitment, except that the patient is not entitled to a trial by jury." Section 53-21-128(1)(c), MCA. Interpreting this subsection, we stated in *B.A.F. I* that "[t]he statute plainly triggers the procedural requirements for commitment hearings[.]" *B.A.F. I*, ¶ 12.

¶18 The parties agree that the post-petition evaluation requirement of §§ 53-21-122(2)(a) and -123(1), MCA, applies to recommitment proceedings. But the State argues that B.A.F. waived his right to a post-petition evaluation by refusing to participate in Stevens's pre-petition mental health evaluation.

¶19 The State cites to Stevens's pre-petition mental health assessment and her testimony at the recommitment hearing to show that B.A.F. refused a mental health assessment and thus waived the post-petition evaluation requirement. Stevens's mental health assessment states, "Respondent's counsel has advised Petitioner that Respondent, exercising the constitutional right to remain silent, refuses to participate in a mental status examination for the sole purpose of evaluating the appropriateness of extension of commitment. Thus,

7

the Interview with Resident and Mental State Examination could not be performed." At the hearing, Stevens testified that she was unable to conduct a pre-petition interview and clinical observation with B.A.F. The State contends that B.A.F.'s refusal to participate in an evaluation, the sole purpose of which was to determine the appropriateness of recommitment, constitutes a waiver of the post-petition evaluation requirement.

¶20 The State cites no authority for its view that a respondent's refusal to participate in a pre-petition interview with the court-appointed "professional person" waives the statutory obligation for a post-petition mental health evaluation. As B.A.F. argues, the patient interview is but one component of Stevens's routine mental health evaluation. Stevens's assessments consist of six separate steps, including a review of the patient's psychiatric history, a review of the patient's social history, a clinical observation, and a review of all medical records. Only the final two components—the patient interview and the mental state examination—were not completed in B.A.F.'s case. Thus, it is not clear from the record, as the State contends, that B.A.F.'s refusal to participate in an interview with Stevens before she filed the Petition "frustrated the ability of the State to follow statutory mandates." B.A.F. did not waive his right to a post-petition mental health evaluation by refusing to participate in a pre-petition interview with Stevens.

¶21 We conclude that B.A.F. has identified an error that implicates a fundamental right because B.A.F.'s liberty is at stake in the proceedings and the State failed to obtain a post-petition evaluation as required by our civil commitment statutes. Therefore, B.A.F. satisfies the first prong of our plain-error review, and we turn to the second prong.

8

¶22 "Under the second prong, 'we . . . weigh[ ] the risk of depriving an individual's liberty against the probable value of the procedure in question[.]'" *In re B.H.*, ¶ 17 (quoting *In re M.K.S.*, ¶ 18). "[W]hen a procedural error," such as the one alleged by B.A.F., "results in no substantial prejudice to a party, the error is *de minimis* and does not affect an individual's liberty interest." *In re B.H.*, ¶ 17 (citations and quotation omitted). In that case, we will decline to reverse for lack of strict compliance with the civil commitment statutes. *In re B.H.*, ¶ 20 (citing *In re M.K.S.*, ¶ 24). For example, in *In re B.H.*, after concluding that the district court "did not provide a complete advisory of rights to B.H.," as required by statute, we declined to exercise plain-error review because the respondent could not meet his burden of showing that the error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *In re B.H.*, ¶ 23.

¶23 B.A.F. argues that the State's failure to conduct a post-petition evaluation compromised the integrity of the recommitment process. He contends his situation is comparable to *In re D.H.* and *In re R.M.*, where we implicitly applied plain-error review and reversed for failure to comply with § 53-21-123, MCA. *See In re D.H.*, 270 Mont. at 483, 893 P.2d at 332; *In re R.M.*, 270 Mont. 40, 45, 889 P.2d 1201, 1204-05 (1995).

¶24 We find *In re D.H.* and *In re R.M.* distinguishable from the present case. Both cases involved petitions for initial commitment, not for recommitment. *In re D.H.*, 270 Mont. at 481-82, 893 P.2d at 331; *In re R.M.*, 270 Mont. at 42-43, 889 P.2d at 1203.

9

B.A.F. is correct; the procedural safeguards of §§ 53-21-122 and -123, MCA, apply to recommitment proceedings through the application of § 53-21-128(1)(c), MCA. On the other hand—and pertinent to a plain-error analysis—original civil commitment proceedings are qualitatively different from recommitment proceedings. When first considering a civil commitment, the court relies solely on the petition for commitment to determine whether probable cause supports the petition. Section 53-21-122(2)(a), MCA ("The judge shall consider the petition."). The language of § 53-21-121(2)(c), MCA, contemplates that a petition for commitment may or may not contain a report by a mental health professional. Section 53-21-121(2)(c), MCA ("The petition must contain . . . the purported facts supporting the allegation of mental disorder, including a report by a mental health professional *if any*[.]" (emphasis added)).

¶25    A petition for recommitment is different. Our recommitment statute states:

> [T]he professional person in charge of the patient . . . may petition the district court in the county where the patient is committed for extension of the commitment period[.] The petition *must* be accompanied by a written report and evaluation of the patient's mental and physical condition. The report *must* describe any tests and evaluation devices that have been employed in evaluating the patient, the course of treatment that was undertaken for the patient, and the future course of treatment anticipated by the professional person.

Section 53-21-128(1)(a), MCA (emphasis added). An original petition for commitment *may* include a mental health evaluation, but such an evaluation *must* accompany a petition for recommitment. These records presumably will include—as they did here—professional assessments and diagnoses from the patient's initial period of confinement. A court therefore has more information at its disposal when examining a petition for

10

recommitment than the court would have in reviewing an initial petition for commitment. The proceedings thus are fundamentally different in character. Though the statute requires a post-petition evaluation in a recommitment proceeding, the effect of its omission may be different at the recommitment stage when considering a claim of plain error.

¶26 Here, the District Court based its holding on three years of medical, psychiatric, and behavioral records; an updated mental health evaluation prepared by Stevens in June 2019; and the testimonies of Stevens and Southworth. B.A.F. contends that these sources do not reflect his improvements in the intervening months between the filing of Stevens's Petition and the hearing. But the record contains sufficient evidence that B.A.F.'s psychotic episodes and resistance to medications did not change in 2019. In fact, it shows that B.A.F. was transported to a secured behavioral unit in May 2019 on account of his psychosis and his continued paranoid delusions pertaining to MMHNCC staff and patients as late as June 2019. Because B.A.F. has been under constant monitoring by the MMHNCC since 2016, the absence of a post-petition evaluation did not substantially prejudice him. The court had ample grounds on which to determine that recommitment was necessary.

¶27 We conclude that B.A.F. has not established that the District Court's error resulted in a "manifest miscarriage of justice," "left unsettled the question of the fundamental fairness" of the proceedings, or "compromised the integrity of the judicial process." *In re B.H.*, ¶ 23 (citation and quotations omitted). Requiring a post-petition evaluation in a recommitment proceeding does not have the same probable value that it does in an initial commitment, where its omission carries a far greater risk of depriving an individual's

11

liberty without the required process. *See In re B.H.*, ¶ 17. B.A.F. has not demonstrated substantial prejudice and cannot meet the second prong of plain-error review.

**CONCLUSION**

¶28 We affirm the District Court's August 27, 2019 Order for Recommitment.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

12