FILED

05/13/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0411

DA 23-0411

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 96

IN THE MATTER OF

M.H.W.,

an Alleged Mentally Ill Person,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DI-2020-20
Honorable Heather Perry, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Tammy A. Hinderman, Appellate Defender, Michael Marchesini, Managing Appellate Defender, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Carrie L. Garber, Assistant Attorney General, Helena, Montana

          Kent M. Sipe, Fergus County Attorney, Lewistown, Montana

          Submitted on Briefs:  February 26, 2025

                  Decided:  May 13, 2025

Filed:

                  _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 M.H.W. appeals from the June 1, 2023 Order of the Tenth Judicial District Court, Fergus County, extending his involuntary commitment to the Montana Mental Health Nursing Care Center (NCC) for an additional year. We affirm.

¶2 We restate the following issues for review:

1. *Whether the expiration of M.H.W.'s commitment deprived the District Court of jurisdiction over the proceedings.*

2. *Whether the District Court's failure to enter an order continuing M.H.W.'s commitment requires the reversal of his recommitment under plain error review.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Since June 16, 2020, M.H.W. has been involuntarily committed to the NCC due to paranoid schizophrenia and an inability to manage his diabetes. The court extended M.H.W.'s commitment several times. Relevant here is the District Court's order extending M.H.W.'s commitment for one year on January 6, 2022. The Professional Person petitioned to extend M.H.W.'s involuntary commitment for an additional year on December 14, 2022. The petition requested NCC maintain custody of M.H.W. pending the District Court's ultimate decision and that "a time and place be set for a hearing on this petition." Notice of the petition was served on all parties the next day. The notice provided that the District Court would schedule a hearing within ten days of any party's request, but if such a request occurred "less than 10 days prior to the termination of the previous commitment, the previous commitment [would be] considered extended until the hearing is held." The notice further provided that "[f]ailure to request a hearing will result in the

2

court entering an order of commitment for a period not to exceed 1 year."[1]  The District Court did not issue an order extending M.H.W.'s commitment beyond January 6, 2023.

¶4      Then, on February 8, 2023, M.H.W.'s counsel filed a request for a contested hearing.  The District Court scheduled the hearing for April 6, 2023, and ordered M.H.W. remain committed until that date.  The court then continued this order until April 19, 2023, before rescheduling the hearing again for June 1, 2023.  At the hearing, the District Court concluded M.H.W. continued to exhibit symptoms consistent with schizophrenia and could not provide for his own basic needs, including managing his diabetes, in addition to suffering from Parkinson's disease, other drug induced parkinsonism, insomnia, and major depressive disorder.  The District Court ordered M.H.W.'s recommitment to NCC for up to one year.[2]  M.H.W. now appeals.

## STANDARDS OF REVIEW

¶5      Whether a court possessed subject matter jurisdiction presents a question of law, which we review de novo.  *In re Fair Hearing of Hanna*, 2010 MT 38, ¶ 13, 355 Mont. 236, 227 P.3d 596 (citation omitted).

---

[1] The District Court's notice issued to the parties on December 15, 2022, erroneously stated that "[f]ailure to request a hearing will result in the court entering an order of commitment for a period not to exceed 1 year."  Under § 53-21-128(1)(b), MCA, "[i]f a hearing is not requested, the court shall enter an order of Commitment for a period not to exceed 6 months."  Prudence compels us to note this discrepancy here, even though this error ultimately has no bearing on our plain error analysis.

[2] The written order contained an apparent scrivener's error: the order recommitted M.H.W. "for a period of one (1) year from June 1, 2022," rather than the date of the hearing, June 1, 2023.

3

¶6    We exercise plenary review over issues of due process in an involuntary commitment proceeding. *In re M.K.S.*, 2015 MT 146, ¶ 10, 379 Mont. 293, 350 P.3d 27 (citation omitted).

**DISCUSSION**

¶7    *1. Whether the expiration of M.H.W.'s commitment deprived the District Court of jurisdiction over the proceedings.*

¶8    On appeal, M.H.W. challenges his recommitment to NCC and argues that the District Court lost jurisdiction over his case when the court failed to issue an order extending his commitment by January 6, 2023. M.H.W. reasons that if he required further treatment and commitment after that date, the State could not rely on § 53-21-128, MCA, to extend and would instead need to file a new petition for commitment. M.H.W. contends that § 53-21-128(1)(b), MCA, required the court to then enter an order extending the operative commitment prior to January 6, 2023. Without such an order, M.H.W. maintains the expiration of the commitment authority on January 6, 2023, deprived the District Court of further jurisdiction over the case.

¶9    "Title 53, chapter 21, MCA, provides specific procedural and substantive requirements for involuntary civil commitment proceedings." *In re B.A.F.*, 2019 MT 57, ¶ 7, 395 Mont. 98, 436 P.3d 718. "The statutes provide that at least two weeks before an involuntary commitment expires, the responsible health care professional may petition the court to extend the commitment upon a specific showing of need for the extension." *In re B.A.F.*, ¶ 7 (citing § 53-21-128(1)(a), MCA). Should the district court determine that the individual continues to suffer from a mental disorder and requires commitment, the

4

court shall order commitment as set forth in § 53-21-127, MCA. Section 53-21-128(1)(d), MCA. Relevant here, § 53-21-128(1)(b), MCA, provides:

> Upon the filing of the petition, the court shall give written notice of the filing of the petition to the patient . . . . If any person notified requests a hearing prior to the termination of the previous commitment authority, the court shall immediately set a time and place for a hearing . . . . When a hearing is requested less than 10 days prior to the termination of the previous commitment authority, *the previous commitment is considered extended until the hearing is held.* The notice of hearing must include a notice of this extension. *If a hearing is not requested, the court shall enter an order of commitment for a period not to exceed 6 months.*

(Emphasis added.) Thus, we must examine whether failing to enter an order extending a period of commitment within the deadlines provided for in § 53-21-128, MCA, deprives a court of jurisdiction.

¶10 District courts have "original jurisdiction in all civil matters and cases at law and in equity." *BNSF Ry. Co. v. Cringle*, 2010 MT 290, ¶ 15, 359 Mont. 20, 247 P.3d 706 (citing Mont. Const. art. VII, § 4(1)). "Subject matter jurisdiction involves the court's fundamental authority to hear and adjudicate cases and proceedings." *BNSF*, ¶ 15 (citation omitted). "[A] statutory deadline is, necessarily, a categorical time prescription, not a jurisdictional provision." *State v. Rich*, 2022 MT 66, ¶ 15, 408 Mont. 178, 507 P.3d 176 (quotation omitted).

¶11 In *State v. Rich*, we held that the district court did not lose jurisdiction by failing to review Rich's fitness for trial within ninety days as required by § 46-14-221(3)(a), MCA. *Rich*, ¶ 20. To arrive at this conclusion, we clarified the difference between a statutory timing deadline serving a procedural function and a jurisdictional bar to the court hearing

the case.  *Rich*, ¶ 15 (citing *Miller v. Eighteenth Judicial Dist. Court*, 2007 MT 149, ¶ 46, 337 Mont. 488, 162 P.3d 121; *In re E.G.*, 2014 MT 148, ¶ 12, 375 Mont. 252, 326 P.3d 1092; *BNSF*, ¶ 20; *Davis v. State*, 2008 MT 226, ¶ 23, 344 Mont. 300, 187 P.3d 654).  "A statutory deadline is a claim processing rule that creates a 'notice requirement' or 'time limit.'"  *Rich*, ¶ 15 (quoting *BNSF*, ¶ 16).  "Unlike subject matter jurisdiction, statutory timelines 'are subject to forfeiture and waiver.'"  *Rich*, ¶ 15 (quoting *BNSF*, ¶¶ 15, 18).  Unless a statute expressly imposes a jurisdictional limitation, the expiration of a time bar does not deprive a district court of the jurisdiction to further act in the manner before it.  *Rich*, ¶ 15 (quotation omitted).  The distinction between procedural time limits and jurisdictional bars as articulated in *Rich* required us to overrule prior holdings in *State v. Meeks*, 2002 MT 246, 312 Mont. 126, 58 P.3d 167, and *State v. Tison*, 2003 MT 342,  318 Mont. 465, 81 P.3d 471, insofar as those cases suggested, the ninety-day deadline imposed by § 46-14-221(3)(a), MCA, to review whether a criminal defendant possesses the mental fitness to proceed to trial created a jurisdictional bar.  *Rich*, ¶ 16 (citing *Meeks*, ¶ 19; *Tison*, ¶ 15).

¶12     M.H.W. relies extensively on *In re S.C.*, 2013 MT 140, ¶ 19, 370 Mont. 289, 302 P.3d 88, where we reversed an extension of an involuntary out-patient treatment commitment because the State had petitioned for an extension after the expiration of the commitment period.  There, the court had validly committed S.C. to the Montana State Hospital (MSH) for 90 days.  *In re S.C.*, ¶ 7.  Before the expiration of the 90-day commitment, the State released S.C. from MSH, conditioned on his attending sessions at

the Western Montana Mental Health Center and continuing to take his prescribed medication. *In re S.C.*, ¶ 8. The State filed its § 53-21-198, MCA, petition to extend S.C.'s treatment commitment five days *after* the commitment period expired. *In re S.C.*, ¶ 9. After S.C. neither requested a hearing nor challenged the extension, the court extended S.C.'s conditional release for an additional 90 days. *In re S.C.*, ¶ 9. On appeal, we reversed after concluding that "the expiration of S.C.'s commitment period ended the case" and "left the District Court with no proceeding over which it could exercise continuing jurisdiction." *In re S.C.*, ¶ 17. In doing so, we declined to extend *BNSF*'s distinction between a procedural time limit and a jurisdictional bar to a circumstance in which the State failed to abide by the timing requirements imposed by statute on recommitment proceedings. *In re S.C.*, ¶ 16 (citing *BNSF*, ¶ 17). Several distinctions regarding *In re S.C.* are important to note. First, there was no petition for extension of commitment filed prior to the period of commitment ending, as there was here. Accordingly, *In re S.C.* implicated jurisdictional questions. Secondly, because M.H.W.'s commitment was extended by operation of law for another six months due to his failure to timely request a hearing, it was necessary to enter a new order of commitment for six months—but not for purposes of retaining jurisdiction. The consideration here is not the failure of jurisdiction but the failure of the District Court to enter an order memorializing what was operational by law.[3] Finally, *In*

---

[3] While the "'[n]ot less than two calendar weeks' filing deadline could be construed in the nature of a categorical time bar that would be subject to forfeiture and waiver[,]" the statutory commitment period itself could not. *In re S.C.*, ¶ 18. Thus, the Court lost jurisdiction at the expiration of the commitment period. *In re S.C.*, ¶ 18 (citing *Tison*, ¶ 15). As noted above, *Rich* specifically overruled the suggestion in *Tison* that a procedural deadline is a jurisdictional bar "on that point only." *Rich*, ¶ 16 (citing *Tison*, ¶ 15). The mandatory requirement that the State file a

*re S.C.* was a case on direct appeal following an objection made in the trial court. *In re S.C.*, ¶ 11.    M.H.W. made no objection to the District Court continuing his commitment pending a hearing or to the District Court failing to enter an order in compliance with the statute.  *See In re B.H.*, 2018 MT 282, ¶ 22, 393 Mont. 352, 430 P.3d 1006 ("[A] simple objection or even suggestion by counsel that a statutory requirement had not been satisfied would have alerted the District Court to the problem, which it then could have easily remedied, perhaps during the commitment hearing.")  Our review is, accordingly, under plain error.

¶13    Here, the Professional Person petitioned to extend M.H.W.'s commitment to NCC on December 14, 2022—more than two weeks before the commitment was set to expire on January 6, 2023, as required by § 53-21-128(1)(a), MCA—and the District Court provided notice to all parties.  The statute clearly provides that "the previous commitment is considered extended until the hearing is held" and that "if a hearing is not requested, the court shall enter an order of commitment for a period not to exceed 6 months."  Section 53-21-128(1)(b), MCA.  By operation of statute, M.H.W.'s commitment was extended by six months when he did not timely request a hearing prior to January 6, 2023.[4]  When M.H.W. finally made his request for a hearing, he had already waived his right to a hearing

petition for recommitment within the statutory time limit or else initiate new commitment proceedings articulated by the *In re S.C.* Court remains despite the effect *Rich* had on the jurisdictional claims acquired from *Tison*.  *In re S.C.*, ¶ 19.

[4] As a practical matter, the order that should have been entered by the District Court when M.H.W. failed to timely request a hearing would nonetheless still have to be entered after expiration of the preceding commitment period and, as a matter of law, jurisdiction is not lost to enter it.

and the six-month commitment applied by operation of law.[5] That the District Court entertained M.H.W.'s request and held a hearing establishes that M.H.W. received due process not provided for in the statute. Accordingly, we disagree with M.H.W.'s argument that the expiration of his commitment without a corresponding order extending his commitment deprived the District Court of continuing jurisdiction over the matter.

¶14    *2. Whether the District Court's failure to enter an order continuing M.H.W.'s commitment requires the reversal of his recommitment under plain error review.*

¶15    M.H.W. did not raise any contemporaneous objection to the extension of his commitment beyond January 6, 2023, until a hearing could be held, or the failure of the District Court to issue an order continuing his commitment. Instead, M.H.W. requested a contested hearing on the recommitment petition on February 8, 2023, and expressly acknowledged in his motion that his commitment would continue until a hearing could be held on his objection.

¶16    In general, this Court does not address issues not objected to at trial. *State v. Lawrence*, 2016 MT 346, ¶ 6, 386 Mont. 86, 385 P.3d 968 (citation omitted). However, we may exercise our discretion and review such issues under the plain error doctrine. *Lawrence*, ¶ 6 (citing *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506). The plain error doctrine is to be used sparingly, and only on a case-by-case basis. *Lawrence*, ¶ 6 (citation omitted). Once invoked, the plain error doctrine grounds this

---

[5] A request by the Professional Person for a hearing does not trigger the requirements of § 53-21-128(1)(b), MCA. Rather, upon the filing of a petition, the court is to give notice to a specific list of persons, including the patient, the patient's next of kin, the friend of the respondent, and the patient's counsel. Only if "any person notified requests a hearing" must the court immediately set the matter for hearing. § 53-21-128(1)(b), MCA.

court's review in our "'inherent duty to interpret the constitution to protect individual rights set forth in the constitution.'" *Lawrence*, ¶ 6 (quoting *State v. Finley*, 276 Mont. 126, 134, 915 P.2d 208, 213 (1996), *overruled on other grounds State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817). We may invoke plain error review in an appeal of an involuntary commitment "to consider unpreserved error because the respondent's substantial right—liberty—is at stake." *In re M.K.S.*, ¶ 13 (citations and quotations omitted).

¶17 "The plain error doctrine establishes a two-part test, with the burden on the person facing involuntary commitment to meet both parts of the test." *In re M.K.S.*, ¶ 14. First, the person must demonstrate that "the alleged error implicates a fundamental right." *In re M.K.S.*, ¶ 14. Second, the person must demonstrate that failure to review the alleged error (1) may result in a manifest miscarriage of justice; (2) may leave unsettled the question of the fundamental fairness of the trial or proceedings; or (3) may compromise the integrity of the judicial process. *In re M.K.S*, ¶¶ 13-14 (citation omitted). "A mere assertion that a constitutional right is implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." *In re M.K.S.*, ¶ 14 (citation omitted).

¶18 The Montana and United States constitutions protect against deprivations of liberty without due process of law. Mont. Const. art. II, § 17; U.S. Const. amend. V; U.S. Const. amend. XIV. An individual facing involuntary commitment has all the rights guaranteed by both constitutions. Section 53-21-115, MCA. For individuals experiencing serious

mental illness, Montana law seeks to balance the need for appropriate treatment and the individual's rights and dignity. Section 53-21-101, MCA. "The core of due process 'emphasizes the fairness between the State and the individual dealing with the State.'" *In re S.M.*, 2017 MT 244, ¶ 26, 403 P.3d 324, 389 Mont. 28 (quoting *Evitts v. Lucey*, 469 U.S. 387, 405, 105 S. Ct. 830, 841 (1985)). "[T]he Legislature has taken extensive measures to preserve the integrity of the process and to uphold the interests of persons involved." *In re S.M.*, ¶ 28. We require strict adherence to the involuntary commitment statutory scheme, considering the utmost importance of the rights at stake. *In re S.D.*, 2018 MT 176, ¶ 8, 392 Mont. 116, 422 P.3d 122 (quotation omitted).

¶19    Here, the District Court failed to issue an order extending M.H.W.'s commitment prior to January 6, 2023, when the operative commitment period would have expired had the State not timely petitioned for recommitment within the procedural timelines. Given our profound aversion to an individual "languishing indefinitely in a mental hospital" due to procedural errors, we conclude that this omission by the District Court implicated M.H.W.'s fundamental rights. *State v. Powers*, 2024 MT 211, ¶ 10, 418 Mont. 142, 556 P.3d 526 (quoting *Rich*, ¶ 19). Thus, M.H.W. has satisfied the first element of our plain error test.

¶20    The second element of our plain error review doctrine requires we "'weigh the risk of depriving an individual's liberty against the probable value of the procedure in question.'" *In re M.K.S.*, ¶ 18 (quoting *In re N.A.*, 2013 MT 255, ¶ 23, 371 Mont. 531, 309 P.3d 27). An error of state law does not always amount to a deprivation of procedural

11

due process. *In re M.K.S.*, ¶ 18 (quotation omitted). "'[W]e employ a flexible balancing test to determine whether a particular safeguard is required in a specific circumstance.'" *In re M.K.S.*, ¶ 18 (quoting *In re N.A.*, ¶ 23). When a procedural error results in no substantial prejudice to a party, the error is *de minimis* and does not affect an individual's liberty interest. *In re M.K.S.*, ¶ 18 (citing *In re Mental Health of O.R.B.*, 2008 MT 301, ¶ 30, 345 Mont. 516, 191 P.3d 482).

¶21 Here, the error occurred when the District Court failed to enter an order memorializing the extension as required by § 53-21-128(1)(b), MCA. Pursuant to § 53-21-128(1)(b), MCA, M.H.W. remained under the care of the NCC after the filing of the extension petition pending a recommitment hearing. In his request for a hearing on February 8, 2023, M.H.W. acknowledged that "when a hearing is less than 10 days prior to termination of the previous commitment authority, the previous commitment is considered extended until the hearing is held." M.H.W. further stated he "waive[d] his right to a hearing within 10 days" consistent with the provisions of § 53-21-128(1)(b), MCA. Counsel for M.H.W. neither sought immediate release nor requested an emergency or expedited hearing. At no point during the June 1, 2023 hearing did M.H.W. object to the lack of an order extending his commitment. M.H.W. acquiesced to and participated in the belated hearing despite the opportunity to object to the timeliness of the proceedings. *See In re M.K.S.*, ¶ 22.

¶22 Importantly, the District Court ordered—following a contested hearing at which M.H.W. participated—the extension of M.H.W.'s commitment based upon M.H.W.'s

diagnoses of paranoid schizophrenia, other drug induced secondary parkinsonism, Parkinson's Disease, major depressive disorder, and insomnia. M.H.W.'s attending medical professionals at NCC provided testimony of his inability to take care of his basic needs, including managing his diabetes with diet or insulin treatments, due to paranoia and suspicion towards the treatments because of his underlying mental illness. M.H.W.'s resistance to various treatments included avoiding taking medication and becoming aggressive towards medical staff or other patients. M.H.W. has not demonstrated that the deviation from statutory procedure by the District Court's failure to issue an order continuing commitment meets the burden of the second prong of the plain error test because recommitting him does not result in a manifest miscarriage of justice, leave unsettled questions regarding the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.

¶23 Although the District Court did not enter an order extending M.H.W.'s commitment as required by § 53-21-128, MCA, the court entertained his untimely request for a contested hearing and ordered recommitment after affording M.H.W. notice and the opportunity to be heard. Accordingly, we conclude that the failure of the District Court to enter an order pending a recommitment hearing does not constitute plain error.

## CONCLUSION

¶24 The District Court's failure to enter an order continuing M.H.W.'s commitment did not deprive the court of jurisdiction over the matter. Further, the lack of this order did not ultimately prejudice M.H.W. under plain error review.

13

¶25    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Katherine Bidegaray, dissenting.

¶26    I respectfully dissent from the majority's holding, as it disregards essential statutory safeguards and misinterprets our precedents regarding involuntary commitment procedures. The majority's interpretation of § 53-21-128(1)(b), MCA, allowing implicit continuation of commitment without explicit judicial action, fundamentally undermines statutory precision and due process protections integral to civil commitment proceedings.

¶27    Civil commitment implicates profound liberty interests protected by both the Montana and United States Constitutions. Mont. Const. art. II, § 17; U.S. Const. amend. XIV. Our legislature recognized these interests by explicitly outlining procedures for commitment and recommitment that require affirmative judicial acts—clearly differentiating passive from active language. Section 53-21-128(1)(b), MCA, explicitly mandates that an extension occurs automatically only when "a hearing is requested less than 10 days prior to termination," providing no similar automatic mechanism for hearings requested earlier. Here, the commitment terminated on January 5, 2023, and the

14

Professional Person filed a petition requesting a hearing on December 14, 2022, well before this ten-day threshold, negating the statutory provision for automatic extension applicable only to hearings requested within the ten-day window. Moreover, subsection (1)(b) specifically applies automatic extensions only if one of the explicitly "notified" persons (patient, next of kin, friend of respondent, counsel) requests a hearing within the ten-day period prior to expiration. The Professional Person's earlier request for hearing does not trigger this automatic extension. Since none of the "notified" persons requested a hearing, nothing in subsection (1)(b) operated to extend M.H.W.'s commitment without a court order. Subsection (1)(c), requiring that the procedure "on the petition for extension when a hearing has been requested must be the same in all respects as the procedure on the petition for the original 3-month commitment [except for a jury trial]," independently and affirmatively required the District Court to schedule and conduct a hearing upon the Professional Person's December 14, 2022, timely request, an obligation the court failed to fulfill. None of the procedures found in Title 53, chapter 21, MCA, authorizes a court to hold the first hearing on a December 14, 2022 petition for extension almost six months later as happened here on June 1, 2023.

¶28 Whereas subsection (1)(b)'s mandatory hearing scheduling explicitly requires a hearing request from a specifically listed notified person, subsection (1)(c), nonetheless, independently requires that whenever a hearing is requested—including by the professional person filing the extension petition—the procedure must follow the statutory original commitment requirements, necessarily implying affirmative judicial action. The majority

15

errs by disregarding this clear statutory mandate, effectively rewriting legislative intent by judicial fiat. Such an approach directly contravenes this Court's consistent instruction to strictly adhere to statutory requirements in commitment proceedings. *In re Mental Health of O.R.B.*, 2008 MT 301, ¶ 29, 345 Mont. 516, 191 P.3d 482 ("Montana's civil commitment laws are to be strictly followed."); *In re S.D.*, 2018 MT 176, ¶ 8, 392 Mont. 116, 422 P.3d 122 (emphasizing meticulous adherence to statutory mandates due to significant liberty interests involved).

¶29    Further, the majority inadequately distinguishes *In re S.C.*, 2013 MT 140, 370 Mont. 289, 302 P.3d 88, erroneously relying solely on the timing of petition filing to distinguish this case. In *S.C.*, we held unequivocally that the expiration of a commitment period ends the court's jurisdiction absent statutory extension or timely affirmative judicial action. *S.C.*, ¶ 17. Here, the expiration of M.H.W.'s commitment without timely judicial extension similarly terminated the District Court's jurisdiction. Like *S.C.*, everything after the commitment's expiration was procedurally unauthorized and thus invalid. Thus, *S.C.* directly supports the necessity of strict statutory compliance here, not merely timing differences.

¶30    Moreover, the majority incorrectly concludes that the commitment automatically extended without judicial action although no "notified" person requested a hearing. This interpretation misreads the statute, conflicting directly with the clear statutory language. Subsection (1)(b) explicitly provides for automatic extension only if one of the specifically listed "notified" persons requests a hearing within ten days of the commitment's expiration.

16

Absent the automatic extension trigger, the statute plainly mandates judicial action, stating explicitly that if no hearing is requested, the court "shall enter an order" extending commitment for up to six months. The absence of such an order means jurisdiction terminated on January 6, 2023, upon expiration of the commitment. Thus, the majority improperly conflates separate statutory provisions, creating a scenario of automatic extension that the statute does not permit. Opinion, ¶ 3 n.1, acknowledging that the District Court's December 15, 2022 notice erroneously advised the parties that commitment could be extended up to one year rather than the majority's view that subsection (1)(b) provided an automatic statutory maximum extension of six months, underscores the critical importance of explicit judicial adherence to statutory mandates. Such errors are not trivial; they have substantial impacts on the fundamental fairness and accuracy of commitment proceedings. The acknowledged error further demonstrates why strict statutory compliance and affirmative judicial action are essential to preserving due process.[1]

¶31 Additionally, the majority overlooks the fundamental due process principle that liberty interests must be balanced with strict procedural adherence. While the majority correctly cites *In re M.K.S.*, 2015 MT 146, 379 Mont. 293, 350 P.3d 27, its reasoning inadequately applies *M.K.S.*'s balancing test. A mere eventual hearing does not rectify jurisdictional lapses or fundamental statutory violations. *M.K.S.* directs careful scrutiny of

---

[1] No one addresses the requirement of § 53-21-128(3), MCA, that "the patient's custody may not be affected for more than 1 year without a renewal of the commitment . . . ." Here, the District Court extended M.H.W.'s commitment on the Professional Person's December 14, 2022, petition for extension for 1 year on June 1, 2023, when M.H.W. had already been recommitted for one year on January 6, 2022.

procedural deviations in commitment cases to prevent unlawful liberty deprivations. Such scrutiny compels reversal here.

¶32    Furthermore, the majority's reliance on practical concerns to justify statutory noncompliance is disconcerting. Judicial economy or convenience cannot justify the erosion of due process. Adequate compliance can be readily achieved through simple administrative procedures, such as timely-issued conditional extension orders or calendar protocols. Courts regularly use conditional or provisional orders to ensure compliance with statutory deadlines while simultaneously protecting patients. Implementing a standard protocol for timely-issued conditional extensions, triggered when hearings are requested, is straightforward and well within judicial capacity. Moreover, administrative convenience never justifies undermining clear statutory mandates and due process protections, as emphasized consistently by this Court. Thus, concerns about administrative inconvenience or patient safety are overstated and insufficient to justify undermining clear statutory mandates and due process protections, as consistently emphasized by this Court.

¶33    The proper remedy here aligns precisely with *S.C.*: upon expiration of statutory jurisdiction, dismissal of the extension petition was required, with the State retaining authority to immediately file a new petition, ensuring compliance and safeguarding liberty interests. This statutory adherence is not just procedural formality—it represents the very essence of due process. Permitting procedural laxity here would effectively sanction judicial overreach and diminish legislatively enacted protections designed explicitly to prevent arbitrary liberty deprivations.

¶34    Therefore, I would reverse the recommitment order, reaffirming that strict adherence to statutory provisions in civil commitment cases is mandatory to safeguard fundamental liberty interests and ensure procedural integrity.

¶35    I dissent.

/S/ KATHERINE M BIDEGARAY

Justice Ingrid Gustafson joins in the dissenting Opinion of Justice Katherine Bidegaray.

/S/ INGRID GUSTAFSON