FILED

03/31/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0397

DA 24-0397

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 72N

IN THE MATTER OF:

T.J.M.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDI-24-006
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Tammy A. Hinderman, Appellate Defender Division Administrator,
Jennifer Penaherrera, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Phoebe Marcinek,
Michele Levine, Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs:  February 25, 2026

Decided:  March 31, 2026

Filed:

                _____
                           Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 T.J.M. suffers from chronic, severe mental illness with schizophrenia, psychosis, and bipolar disorder. He has a history of at least three prior in-patient treatments and participation with the Great Falls Program for Assertive Community Treatment (PACT) and community-based group homes. Despite these interventions, T.J.M. has not been successful in maintaining his antipsychotic medications as prescribed and has experienced significant exacerbations requiring reintervention. T.J.M. appeals the involuntary commitment order issued May 6, 2024, by the Eighth Judicial District Court, Cascade County, Montana. He asserts the District Court improperly appointed a mental health clinician as the "friend of respondent" for purposes of § 53-21-122(2)(b), MCA, and that his rights were not validly waived. We affirm.

¶3 T.J.M. is a single man with a lengthy history of mental illness. His medical history shows he is frequently noncompliant with prescribed medications and is repeatedly, if not chronically, homeless and unemployed.

¶4 The State filed a petition for involuntary commitment on May 3, 2024. The petition asserted T.J.M. was an inmate at the Cascade County Detention Center (CCDC) and had been exhibiting "scatological behavior" including stacking fecal matter in his sink,

2

defecating on himself, defecating on the floor, rambling, responding to internal stimuli, and hitting a detention officer. The petition further asserted T.J.M. was noncompliant with voluntary oral medication and documented a chronic history of severe mental illness with medication noncompliance and a pattern of cyclical deterioration and intervention.

¶5 At the initial appearance on the petition, T.J.M.'s counsel expressed that T.J.M. wanted to go to an outpatient facility, but that he had nowhere to live and "definitely need[ed] to be stabilized." The District Court also heard from the mental health clinician, Jacki Miller, a CCDC employee. The State offered Miller to act as the court-appointed friend, pursuant to § 53-21-122(2)(b), MCA. While Miller testified to her observations of T.J.M. while at CCDC, the District Court inquired if Miller was willing to serve as friend of T.J.M. and if she felt she understood what his best interests were. Miller expressed she was willing to serve as the friend and represented that she understood what T.J.M.'s best interests were, as well as the rights that had been read to T.J.M. Miller also expressed it was in T.J.M.'s best interest to waive those rights and for him to be placed in a facility, not a jail, where he could be stabilized. Without objection and with specific agreement expressed by T.J.M.'s counsel, the District Court appointed Miller as T.J.M.'s friend.

¶6 Following the testimony of Miller, the State called Dr. Madsen as a witness. At the outset of her testimony, the District Court told her, "since we do have the stipulation you can be fairly tight." No objection or representation was made that there was no stipulation to the commitment sought. Dr. Madsen testified that she authored the mental health evaluation based on her review of T.J.M.'s "extensive medical and forensic records." She also testified that T.J.M. suffered from a mental disorder with a long history of being unable

3

to care for his basic needs. He was not compliant with medications and lacked insight into his need for medication. Dr. Madsen recommended commitment to the Montana Mental Health Nursing Care Center in Lewistown, Montana, but explained the facility would not take him unless he was first stabilized at Montana State Hospital. Following Dr. Madsen's testimony, the District Court granted the relief sought in the petition and ordered T.J.M.'s immediate transport to Montana State Hospital.

¶7 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law correct. *In re C.B.*, 2017 MT 83, ¶ 11, 387 Mont. 231, 392 P.3d 598.

¶8 Civil commitments are governed by Title 53, chapter 21, MCA. The purpose of the statutes is to secure the care and treatment needed for individuals requiring commitment with full respect for their dignity and personal integrity while also assuring due process rights. Section 53-21-101, MCA. The statutes are to be applied to ensure the government does not invade an individual's freedom or liberty without due notice, cause, and process. *In re B.F.*, 2021 MT 257, ¶ 15, 405 Mont. 525, 496 P.3d 554.

¶9 For the first time on appeal, T.J.M. asserts the District Court's appointment of Miller was inappropriate as he believes she had a conflict of interest in serving as such by virtue of her employment at CCDC. He asserts that Miller was familiar with T.J.M. through her work as a mental health counselor at the CCDC, and because she was employed at CCDC—the entity that detained T.J.M.—her interests were aligned to some degree with the county's such that her private employment interest would be served by waiving T.J.M.'s rights. T.J.M. also implies that since the District Court did not pronounce the actual appointment

4

of Miller as a friend of T.J.M. until after Miller testified, Miller's testimony did not validly waive T.J.M.'s rights. We are not persuaded by these arguments.

¶10 It is well-established that we will not address issues raised for the first time on appeal. *In re C.B.*, ¶ 16. This is a sound rule as it would be fundamentally unfair to fault the district court for failing to correctly rule on an issue it was not given the opportunity to consider. *In re C.B.*, ¶ 16. We may, however, review an unpreserved claim under the plain error doctrine when a constitutional or substantial right is at issue. *In re B.F.*, ¶ 13. Under the plain error doctrine, T.J.M. must establish (1) the asserted error implicates a fundamental right, and (2) a "failure to review the asserted error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *In re B.F.*, ¶ 14.

¶11 Here, as T.J.M. has identified an error which implicates his fundamental liberty right, the first prong of our plain error review is met. We then turn to the second prong. From our review of the record, T.J.M. has failed to establish even a prima facie showing that Miller had a conflict of interest in serving as his friend. While Miller was familiar with T.J.M. through her employment, T.J.M. made no showing that she was involved in any way with his placement at CCDC or that she would benefit in any way from serving as his friend and waiving his rights. Miller did not participate in any mental health evaluation of T.J.M., nor did she author any evaluations considered by Dr. Madsen. T.J.M.'s attorney assured the court that Miller was not a witness presented by the State in support of T.J.M.'s commitment and there is nothing in the record to suggest that. Finally, T.J.M. failed to show Miller to be biased, unobjective, or to have any motivation other than

effectuating T.J.M.'s best interest. The District Court did not err in appointing Miller as T.J.M.'s friend.[1] As there was no error, no plain error review is warranted.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶13 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

---

[1] As to T.J.M.'s implication that Miller expressed waiver of his rights prior to the court formally appointing her as friend, to accept such would elevate form over substance. It is apparent from the transcript that the District Court's colloquy with Miller was in relation to considering her for appointment and, assuming her appointment, whether she understood T.J.M.'s rights and waived them. It would have been more than redundant for the court to go through this colloquy, say the magic words of appointment, and then go through the colloquy again.